## In the Matter of ADELE B. DUNN.

(Filed 29 January, 1954.)

**1. Insane Persons**

An inquisition of lunacy as regards the person whose sanity is in question is a proceeding *in personam;* as it affects his property it is a proceeding *in rem.* It is neither a criminal action, G.S. 1-5, nor a civil action as defined in G.S. 1-2, nor a special proceeding under G.S. 1-3, though it is of a civil nature.

**2. Clerks of Court § 3—**

The clerk of the Superior Court has only such jurisdiction as is given him by statute.

**3. Insane Persons § 15—**

Where there has been no inquisition of lunacy, a lunatic may defend by a guardian *ad litem.*

**4. Insane Persons § 9e—**

An insane person is liable, under an obligation imposed by law, for the reasonable value of the necessaries furnished him under an intent to charge therefor.

**5. Insane Persons § 1—**

An inquisition in lunacy is for the benefit of the alleged insane person, and necessary for the protection of his person and property, and every reasonable safeguard should be thrown around a person whose sanity is inquired into.

**6. Insane Persons § 4—**

When the court is called upon to make an allowance for attorneys, guardians *ad litem,* etc., such allowances shall be fair and reasonable.

**7. Insane Persons § 9e—Allowances to attorney and guardian ad litem for services rendered in inquisition may be made as for necessaries.**

Where a person is committed to a hospital for observation and treatment under G.S. 122-79 without notice being served upon her or upon anyone on her behalf, and in her absence, and thereafter a petition in accord with

G.S. 35-2 is filed by a relative requesting an inquisition of lunacy and the appointment of a trustee, *held*, upon the rendition of a judgment in the inquisition of lunacy that the person to be committed back to the hospital for treatment, the court, upon proper petition, should make a reasonable allowance to the guardian *ad litem* appointed by the clerk therein, who acted in good faith in representing her in the hearing, as well as allowance to the attorney employed by the guardian *ad litem* and to a psychiatrist and a stenographer for services performed in connection with the sanity proceeding, which allowance may be made as for necessaries without regard to whether the appointment of the guardian *ad litem* is void or not.

APPEAL by Sam M. Millette, guardian *ad litem* of Adele B. Dunn, an incompetent, from *Sharp, Special J.,* August Special Civil Term 1953. MECKLENBURG.

The estate of Adele B. Dunn consists of real and personal property, and has a value in excess of $500,000.00. On 24 March 1953 Chase Brenizer, David S. Citron and P. M. King filed a verified petition under the provisions of G.S. 122-79 with the Clerk of the Superior Court of Mecklenburg County setting forth these facts: (1) Chase Brenizer is a brother of Mrs. Adele B. Dunn, and a resident of Mecklenburg County; (2) David S. Citron and P. M. King are duly licensed and practicing physicians in Charlotte; (3) Adele B. Dunn is now, and has been for many years, a resident of Mecklenburg County; (4) the undersigned have carefully examined Adele B. Dunn, and find that she is mentally ill, and believe her to be a fit subject for commitment to Highland Hospital, Asheville, where her estate can pay for treatment, and that her detention and treatment there will be to her benefit; (5) that Drs. Citron and King have no connection with Highland Hospital.

On the same day the petition was filed in his office the Clerk of the Superior Court of Mecklenburg County without the petition being served on Adele B. Dunn, or upon anyone for her, and in her absence, heard the petition. The clerk's order states that this matter coming on to be heard upon the petition, and after making a full and careful investigation of the facts, he, the Clerk, finds as a fact that Adele B. Dunn is a fit subject for commitment to a private hospital, and that her detention for observation and treatment will be to her benefit; that she is a *bona fide* citizen of Charlotte, and that her remaining at large is injurious to her, and disadvantageous, if not dangerous to the community. Thereupon, the Clerk approved the petition, which he called a certificate, and ordered Adele B. Dunn to be committed to, and detained in Highland Hospital, Asheville, for observation and treatment until further orders of this Court, or until released by the superintendent of the hospital.

On 30 April 1953 Dr. R. Charman Carroll made and sent to the Clerk of Superior Court of Mecklenburg County an affidavit stating that she is Medical Director of the Highland Hospital at Asheville, that Adele B.

Dunn is confined in the hospital, that she is familiar with Adele B. Dunn's mental condition and that Adele B. Dunn is of insane mind and memory, and is unable to manage her affairs; and that this certificate of incompetency is issued pursuant to the provisions of G.S. 35-3.

On 13 May 1953, under the provisions of G.S. 35-2, Chase Brenizer filed a petition before the Clerk of the Superior Court of Mecklenburg County stating that Adele B. Dunn under a former order of the Clerk had been committed to Highland Hospital for treatment, where she still is; that she is mentally disordered, and he prayed that an inquisition be had; that a notice to show cause be served upon her to show cause, if she could, as to why a trustee should not be appointed to manage her affairs; and that a jury be impaneled to inquire into the state of her mind, and that if the jury find that she is incompetent by reason of mental disorders to manage her affairs, a trustee be appointed to manage her affairs.

On 15 May 1953 a copy of the petition and a notice to show cause was served upon Adele B. Dunn in Highland Hospital by the Sheriff of Buncombe County.

On 15 May 1953 Grace Garrison, a close friend of Adele B. Dunn, and interested in her welfare, filed with the Clerk of the Superior Court of Mecklenburg County a verified application for the appointment of a guardian *ad litem* for Adele B. Dunn. This application sets forth in substance the contents of the petitions of 24 March 1953 and 13 May 1953 and the orders of the Clerk based on said petitions, and then states: (1) That on or about 27 March 1953, so Grace Garrison is informed and believes, Adele B. Dunn, against her will was physically removed from her home in Charlotte, and carried to Highland Hospital, where, since then, she has been held incommunicado; (2) that none of her friends have been permitted to see her; (3) that in one communication gotten out of the hospital by Adele B. Dunn, she has implored her friends to secure her release; (4) that it is vital to Adele B. Dunn that some suitable person be appointed by the court as guardian *ad litem* for her, to have her examined by competent psychiatrists, and to prepare her defense in her absence and physical detention under the previous ruling of this Court.

Pursuant to said application the Clerk made an order on 15 May 1953 stating that Adele B. Dunn is entitled to defend the charges made concerning her, and appointed Sam M. Millette, an attorney at law of Charlotte, her guardian *ad litem*. Millette employed Richard M. Welling of the Charlotte Bar to represent him as guardian *ad litem*.

Grace Garrison, acting for herself and other friends of Adele B. Dunn, had theretofore employed Richard M. Welling to appear for Adele B. Dunn, and agreed to advance him a fee of $500.00, of which amount he has been paid $200.00 by Grace Garrison.

In re Dunn

In the Record appears an affidavit of J. Spencer Bell, an attorney of Charlotte and past president of the North Carolina Bar Association. This affidavit may be summarized as follows: He makes this affidavit to be presented to the Clerk of Superior Court of Mecklenburg County in connection with a matter now pending before the Clerk in regard to the appointment of a trustee for Adele B. Dunn. That on numerous occasions various friends of Mrs. Dunn called on him in regard to having Mrs. Dunn's interest represented—the proceedings under which she had been committed to Highland Hospital having been *ex parte* without an opportunity to be heard, and the proceedings next instituted for the appointment of a trustee being *ex parte*. Mrs. Dunn was then under restraint in Highland Hospital. The friends of Mrs. Dunn were of the opinion she should be released from the hospital. On some occasions prior to these requests he had been requested by Mrs. Louise Brenizer, on behalf of her husband Chase Brenizer, to represent them in bringing a petition to have a trustee appointed for Mrs. Dunn. He refused to take any action because of his personal acquaintance with Mrs. Dunn and, therefore, when called upon by Mrs. Dunn's friends to appear for Mrs. Dunn and resist such a petition, he felt that he should not accept employment on either side. He believes that in these proceedings against Mrs. Dunn, she was entitled to representation, as she was then under forceable restraint in a mental institution and that her friends had a right on behalf of Mrs. Dunn to employ counsel to represent her interests, especially in view of the fact that her liberty was concerned. That he recommended to her friends that Richard M. Welling was a suitable and competent counsel to represent Mrs. Dunn at the suggestion of such friends. That these friends following his suggestion employed Welling. This affidavit is dated 12 June 1953.

On 23 May 1953 Millette and Welling went to Asheville, and saw Adele B. Dunn in the Highland Hospital, where she was held in physical restraint. She told them she wanted to do everything she could to protect herself and that she was in favor of Millette representing her as guardian *ad litem* and Welling as her attorney.

On 25 May 1953, Millette as guardian *ad litem* and Welling as her attorney, filed a motion with the Clerk stating that the inquisition was coming on for a hearing before him and a jury on 29 May 1953, and praying that an order issue directing that Highland Hospital have Adele B. Dunn present at the office of Dr. W. D. Holbrook, a psychiatrist, in Charlotte at 5:00 p.m., 28 May 1953, so that Dr. Holbrook may make an examination of Adele B. Dunn, which is needed in her defense.

On the same day the Clerk made an order granting the prayer of the motion.

On 27 May 1953 the guardian *ad litem* filed an answer to the petition dated 13 May 1953.

·On 29 May 1953 the jury summoned in accordance with the provisions of G.S. 35-2, after hearing the evidence found that Adele B. Dunn by reason of mental disorders was incompetent to manage her affairs. Whereupon on the same day the clerk entered judgment appointing the Wachovia Bank & Trust Company, trustee, to manage the affairs of Adele B. Dunn, and ordered that it be vested with all the powers of a guardian in administering the estate. The guardian *ad litem,* Millette, and Welling were present at the hearing, and took part in it.

On 3 June 1953 the Clerk entered an order committing Adele B. Dunn back to Highland Hospital for treatment, until further order of the court. On the same day Pless, J., presiding over the courts of the Fourteenth District approved the proceedings.

On 3 June 1953 Millette, guardian *ad litem,* through Richard M. Welling, his attorney, filed a motion with the Clerk praying that an order be entered directing the trustee of Adele B. Dunn to pay the following amounts from her estate for services rendered to Adele B. Dunn, which amounts are alleged to be fair and reasonable and he recommends that they be paid: (1) $150.00 to Dr. W. D. Holbrook for examining Adele B. Dunn 28 May 1953; (2) $6.00 to Miss Neva Cox for taking the deposition of Chief Frank N. Littlejohn during the proceedings and supplying a copy to the guardian *ad litem;* (3) that Grace Garrison be paid $200.00 which she paid to Richard M. Welling. The guardian *ad litem* further prayed that a reasonable allowance be made to himself for his services as guardian *ad litem,* a reasonable fee be paid to his attorney Richard M. Welling, and that his attorney be reimbursed $32.58 for expenses incurred in representing him and paid by Welling.

The Wachovia Bank & Trust Company, as trustee, filed an answer resisting payment of any amount.

On 15 June 1953 the Clerk entered orders that the appointment of Sam M. Millette as guardian *ad litem* for Adele B. Dunn by himself was contrary to law, and denied *in toto* the motion to pay the aforesaid amounts. To these orders Millette, guardian *ad litem,* excepted and appealed to the Superior Court.

On 5 August 1953 Sharp, Special J., entered judgment affirming the Clerk's orders.

To the judgment entered Sam M. Millette, guardian *ad litem* for Adele B. Dunn, excepted and appealed. ·

*Welling & Welling for Sam Millette, guardian ad litem of Adele B. Dunn, Appellant.*

*Tillett, Campbell, Craighill & Rendleman for Wachovia Bank & Trust Company, Trustee of Adele B. Dunn, Appellee.*

PARKER, J.   The appellee briefly states its position thus: (1) Our law does not require or contemplate the appointment of a guardian *ad litem* for an alleged incompetent in lunacy proceedings; (2) No one, and especially an outsider, should be allowed, however worthy his motives, to inject himself into a lunacy proceeding, and whether under the guise of a purported (*ex parte*) appointment as guardian *ad litem,* or otherwise, expect to collect money for his time and trouble out of the incompetent's estate.

The appellee on page 12 of its brief says: "In this connection, it should be noted that there is a statute permitting the appointment of a guardian or a guardian *ad litem* in a proper case upon a certificate from the superintendent of a hospital to the effect that a person in the hospital is 'of insane mind and memory.' G.S. 35-3." It seems that the appellee has completely overlooked the certificate of incompetency filed with the Clerk of the Superior Court of Mecklenburg County by Dr. R. Charman Carroll. This appears to be very near, if not, an admission by the appellee that the appointment of the guardian *ad litem* in this proceeding was proper.

The appellee contends that G.S. 1-65, which provides that infants, lunatics, persons *non compos mentis,* etc., defend by a guardian *ad litem* applies only to actions and special proceedings, and an inquisition of lunacy under G.S. 35-2 is neither, quoting McIntosh N. C. Prac. & Proc., Sec. 98, p. 96: "An inquisition of lunacy would seem to be neither a civil action nor a special proceeding." Dr. McIntosh cites as his authority C.S. 2285, now G.S. 35-2, which is captioned "Inquisition of Lunacy; Appointment of Guardian."

An inquisition of lunacy as regards the person whose sanity is in question is a proceeding *in personam;* as it affects his property is a proceeding *in rem.* 44 C.J.S., Insane Persons, Sec. 8. Such an inquisition is certainly not a criminal action. G.S. 1-5. It is not a civil action as defined in G.S. 1-2. G.S. 1-3 states: "Every other remedy is a special proceeding." Certainly such an inquisition is of a civil nature, though it would seem it is not a special proceeding under G.S. 1-3. *In re Cook,* 218 N.C. 384, 11 S.E. 2d 142.

The Clerk of the Court has only such jurisdiction as is given him by statute. *Beaufort County v. Bishop,* 216 N.C. 211, 4 S.E. 2d 525; *High v. Pearce,* 220 N.C. 266, 17 S.E. 2d 108; *Johnston County v. Ellis,* 226 N.C. 268, 38 S.E. 2d 31. The appellee contends that as the inquisition in lunacy was not a civil action or special proceeding, the Clerk's appointment of the guardian *ad litem* for Adele B. Dunn in the proceeding was void.

We said in *Smith v. Smith,* 106 N.C. 498, 11 S.E. 188, ". . . we think it well settled that where there has been no inquisition the lunatic may

sue by next friend" (citing in support decisions of the English Chancery Court). We think the reverse is equally true that where there has been no inquisition the lunatic may defend by a guardian *ad litem*.

The appellant contends that the case of *Smith v. Smith, supra,* refers only to actions and special proceedings.

However, in deciding this matter, it is not necessary for us to decide whether the Clerk's order appointing Sam M. Millette, guardian *ad litem* for Adele B. Dunn, was void or not.

It is well settled law that an insane person is liable, under an obligation imposed by law, for necessaries furnished to him, provided there was an intent to charge therefor and credit was extended to him. 44 C.J.S., Insane Persons, Sec. 115. The obligation is to pay the reasonable value of the necessaries furnished. 28 Am. Jur., Insane and Other Incompetent Persons, Sec. 62. *Ruffin, C. J.,* speaking for the Court in *Richardson v. Strong,* 35 N.C. 106, says: "There is, therefore, no absurdity in the case of lunatics more than in that of infants in implying a request to one rendering necessary services or supplying necessary articles, and implying also a promise to pay for them." As to necessaries furnished infants see *Cole v. Wagner,* 197 N.C. 692, 150 S.E. 339; *Jordan v. Coffield,* 70 N.C. 110.

This question is presented: Were the services rendered in this case for which the guardian *ad litem* in his motion seeks payment from the estate of Adele B. Dunn necessaries for Adele B. Dunn?

An inquisition in lunacy is for the benefit of the alleged insane person, and necessary for the protection of his person and property. Depriving a person of his liberty and his freedom to do with his property as he deems proper and putting him under the stigma of insanity or of being a person *non compos mentis* is a grave matter. Every reasonable safeguard should be thrown around a person whose sanity is inquired into. An incompetent person is helpless and the law must think and act for him.

"It is generally agreed that insanity proceedings are for the benefit of the alleged incompetent, and necessary to the protection of his person and property. Since legal services are required in the proper prosecution and defense of the proceedings the fees of counsel involved on both sides have been held recoverable from the incompetent's estate on the principle that an incompetent is liable for necessaries furnished him." Anno. 22 A.L.R. 2d, p. 1439, where the cases are cited. This statement has been quoted verbatim in Cumulative Supplement to Vol. 28 Am. Jur., p. 116.

"On the theory that one alleged to be incompetent is entitled to a defense, as essential to the protection of his rights, it has been frequently held that an attorney who defends him is entitled to compensation even though the verdict is against his client." Anno. 22 A.L.R. 2d, p. 1447, citing cases from Kentucky, Louisiana, Missouri, New Jersey, New York, Pennsylvania and England.

In *Field v. Tarner* (1855, Eng.), 3 Eq. Rep. 1012, 3 Week R 469, a solicitor was held entitled to recover from the estate of his client, after the latter's death, the costs of an unsuccessful opposition to an inquiry into the client's state of mind. The court said that an insane person was entitled to be represented in the investigation into his sanity, and that no solicitor would represent him if costs were refused.

Buswell on Insanity, Sec. 284, is as follows: "Costs and counsel fees reasonably incurred by either party in proceedings to establish the lunacy of a person are regarded, both at law and in equity, as necessary expenses incurred for the benefit of the lunatic, and are recoverable against him or his estate."

"As a general rule, in some jurisdictions affirmed by express statutory provisions, where there is a finding of insanity, the costs of the inquiry are to be paid by the insane person or his estate, it being considered that these are in the nature of necessary expenses incurred for the benefit of the person and for which he or his estate is impliedly bound. . . . The costs include any expenses reasonably and properly incurred. Commissioners' and attorneys' fees are proper items of costs; but the items of costs are restricted to those incurred in the lunacy proceeding, and therefore expenses incurred before or after the inquest generally are not allowable." 44 C.J.S., Insane Persons, Sec. 34, pp. 98-99. In addition to the authorities cited in support of the text, see *Re Freshour*, 174 Mich. 114, 140 N.W. 517, 45 L.R.A. (N.S.) 67, Ann. Cas. 1915A 726, where additional authorities are cited. The authorities are not entirely agreed on this subject but it would seem that the better rule and the one apparently followed by a majority of the courts is as we have quoted it above.

It is the rule with us that when the court is called upon to make an allowance for attorneys, guardians *ad litem*, etc., such allowances should be fair and reasonable. *Hood, Comr. of Banks, v. Cheshire*, 211 N.C. 103, 189 S.E. 189.

On 24 March 1952 the Clerk of the Superior Court of Mecklenburg County acting under G.S. 122-79 committed Adele B. Dunn to Highland Hospital, Asheville, for observation and treatment, finding as a fact that her remaining at large was injurious to her, and disadvantageous, if not dangerous, to the community. That was done without any notice served upon her, or upon anyone in her behalf, and in her absence. On 13 May 1953 a petition in accord with G.S. 35-2 was filed with the Clerk by a brother of Adele B. Dunn requesting an inquisition of lunacy in respect to Adele B. Dunn and the appointment of a trustee for her property. On 15 May 1953 Grace Garrison, a close friend of Adele B. Dunn, acting for herself and other friends of Mrs. Dunn, employed Richard M. Welling of the Charlotte Bar to represent Mrs. Dunn in the sanity hearing, and Grace Garrison agreed to advance him a fee of $500.00 and paid him

$200.00. Grace Garrison filed a written application with the Clerk requesting him to appoint a guardian *ad litem* in said proceeding for Mrs. Dunn to protect her interests. It would seem reasonable to infer that Welling drafted the petition for her. The Clerk appointed Millette as guardian *ad litem,* and he employed Welling as his attorney. It is apparent that Grace Garrison, Dr. W. D. Holbrook, Miss Neva Cox, Richard M. Welling and the guardian *ad litem* acted in good faith under the Clerk's appointment of Millette as guardian *ad litem,* particularly in the light of the affidavit of J. Spencer Bell. The guardian *ad litem,* his attorney Welling, Dr. W. D. Holbrook, Miss Neva Cox and Grace Garrison have performed services in the sanity proceeding, which resulted in the protection of the incompetent and the preservation of her estate valued in excess of $500,000.00, and certainly there was an intent on their part, with the exception of Grace Garrison, to charge for such services, for which they expected pay from the estate of Mrs. Dunn.

We think, under the facts of this proceeding, that the services rendered by Dr. W. D. Holbrook, Miss Neva Cox, Sam M. Millette, guardian *ad litem,* and Richard M. Welling, his attorney, are in the nature of necessary expenses incurred for the benefit of Adele B. Dunn, for which her estate is impliedly bound, and for such services incurred in the lunacy proceeding, and this includes reasonable expenses of Welling necessarily incurred and paid by him in the proceeding (which it is alleged amount to $32.58), the court should make such allowances to them as are fair and reasonable. When the court has fixed the allowance to Richard M. Welling, it shall deduct $200.00 therefrom, and pay it to Grace Garrison.

This proceeding is ordered remanded to the lower court, where judgment shall be entered in accordance with this opinion.

Error and remanded.