IN RE GUARDIANSHIP AND CONSERVATORSHIP OF EVERETT D.
LARSON, AN ALLEGED INCAPACITATED PERSON.
BARBARA L. PROKUPEK AND WILFRED HENRY LOOBY,
TEMPORARY GUARDIAN AND CONSERVATOR,
APPELLEES, V. EVERETT D. LARSON, APPELLEE,
AND JOSEPH TOMAN, APPELLANT.

708 N.W.2d 262

Filed January 13, 2006.    No. S-05-257.

D.C. Bradford, John P. Ellis, and Justin D. Eichmann, of Bradford & Coenen, for appellant.

Susan J. Spahn and Gerald L. Friedrichsen, of Fitzgerald, Schorr, Barmettler & Brennan, P.C., L.L.O., for appellee Wilfred Henry Looby.

David J. Cullan and Margaret A. Badura, of David J. Cullan & Associates, and Kirk L. Meisinger, of Ginsburg & Meisinger, for appellee Everett D. Larson.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

McCORMACK, J.

## I. NATURE OF CASE

This case presents an appeal from an interlocutory order made by the county court during guardianship and conservatorship proceedings for an alleged incapacitated person.

## II. BACKGROUND

On August 3, 2004, Barbara L. Prokupek, a child of Everett D. Larson, filed a petition for the appointment of a temporary guardian and conservator and a permanent guardian and conservator in the county court. The petition alleged that Larson was suffering from dementia and early onset Alzheimer's disease and

was no longer able to make appropriate medical and financial decisions for himself. The petition alleged that Larson presently had no guardian or conservator, that an emergency existed because his doctors needed someone in place to make appropriate medical decisions, and that Larson needed someone to take care of his financial dealings. The petition suggested Wilfred Henry Looby as a suitable and proper person to act as the temporary guardian.

That same date, the county court issued an order appointing Looby as the temporary guardian of Larson, authorized and empowered to take possession of and have the care and management of the estate, subject only to the limitation that Looby not pay compensation to himself or his attorney from Larson's assets or sell real property of the estate without a court order. The appointment was to continue until further order of the court. Larson was sent a notice of hearing for the petition for appointment of a guardian and conservator, stating that a temporary guardian had been appointed for Larson and that a hearing was to be held as to the appointment of a permanent guardian on September 22. The notice set forth, inter alia, Larson's right to have an attorney appointed to represent him, right to present evidence on his behalf and compel the attendance of witnesses; right to have the powers of the guardian and/or conservator limited by the court; and right to appeal any final order.

No hearing was held on September 22, 2004, as to the appointment of a permanent guardian. On September 22, Larson, by and through his attorney, Mary L. Wilson, filed an objection to the petition. The objection stated that Larson objected to the proposed appointment of any guardian and conservator but that if such a guardian and conservator were required by the court, he requested he be allowed to choose the person so appointed. This objection was apparently never ruled upon or pursued by Wilson for a ruling.

That same date, Looby filed with the county court an application for appointment of a guardian ad litem (GAL) and motion for continuance, referring to Larson's objection and stating that all interested parties appeared to agree to the necessity of a GAL. There does not appear on the record any stipulation as to a continuance of the hearing on the petition.

The county court issued an order appointing a GAL for Larson. The GAL was ordered to investigate the matter and file a report with the court no later than 48 hours prior to the next hearing regarding the appointment of a permanent guardian and conservator for Larson. Without any specific findings, the court also ordered that the authority of the temporary guardian and conservator should continue until further order.

In the GAL's report, she stated that the medical records showed a diagnosis of dementia and Larson's inability to care for himself. The GAL described that about 1½ years before the current petition to appoint a guardian and conservator, a petition for the appointment of a guardian and conservator was filed in Cass County, pursuant to the recommendation of Larson's doctor at that time. Prokupek was assigned as the temporary guardian and conservator for approximately 2 months, but there was an objection to the petition, and the matter was resolved when Looby was appointed, as per Larson's agreement, as Larson's attorney in fact pursuant to a durable power of attorney. This power of attorney was apparently revoked by Larson without notice to anyone, and another attorney in fact was named, Joseph Toman. In approximately November 2003, around the time that Larson appointed Toman as his attorney in fact, Larson deeded 100 acres of his farmland to Toman.

The GAL stated that during her interview with Larson, it appeared at first that he knew what was going on and that he remembered a lot about the general state of his resources and farming; however, she stated that after talking with him longer, he repeated the same things over and over again. Larson expressed anger toward his son and Prokupek, accusing them of being "greedy" and ignoring him. Larson explained that he gave the 100 acres to Toman to keep it from his greedy children.

The GAL reported that Larson was aware that the guardianship action was occurring and admitted he could no longer live alone and had no objection to the appointment of a guardian. However, Larson wished to choose one of his friends as his guardian and conservator. Larson described Looby as a "crook." However, the GAL stated her opinion that Looby was carrying out his fiduciary duties according to the law and consistent with what was in Larson's best interests. Wilson was also interviewed

by the GAL, and Wilson allegedly stated that she believed that Prokupek, as a beneficiary, should have a say in the management of Larson's affairs and that Prokupek wished Looby to continue as guardian.

The GAL concluded that Larson lacked the capacity to make any intelligent recommendation as to his choice for a guardian and conservator. The GAL recommended that Looby be appointed as a permanent guardian and conservator, remaining as temporary guardian and conservator until that time; that Toman and the friend Larson had suggested as guardian be restricted from any contact with Larson; and that further investigation be carried out concerning the validity of the transfer of 100 acres to Toman.

On December 3, 2004, an entry of appearance as attorney for Larson was filed by Margaret A. Badura of the law firm David J. Cullan & Associates. On December 14, a motion to show cause, to recognize counsel, and to schedule hearing was filed with the county court by Badura and David J. Cullan of the law firm David J. Cullan & Associates, as well as by Kirk L. Meisinger of the law firm Ginsburg & Meisinger. Badura, Cullan, and Meisinger alleged that Larson had terminated the employment of Wilson as his attorney, but despite a stated intention of doing so, Wilson had failed to withdraw; that Badura and Meisinger were his current attorneys of choice; and that it was in the best interests of Larson and the efficient administration of justice that Larson's choice of attorneys be honored. Badura, Cullan, and Meisinger requested that Wilson show cause why she should not be directed by the court to withdraw. Meisinger filed an entry of appearance on December 17. On December 22, Wilson filed an application for a court order allowing her to withdraw as attorney of record.

On December 22, 2004, Larson, by and through his attorneys Badura, Cullan, and Meisinger, filed an application for findings and order. The application alleged that under Neb. Rev. Stat. § 30-2626(e) (Cum. Supp. 2004), a temporary order for guardianship shall terminate at the end of 90 days unless a request is filed within the 90-day period and the court extends the temporary guardianship for good cause shown. Similar restrictions for a temporary conservatorship were set forth, citing Neb. Rev. Stat.

§ 30-2630.01(e) (Cum. Supp. 2004). The application alleged that more than 90 days had elapsed without a request or good cause shown for extending the temporary guardianship or conservatorship. Larson thus prayed for a court order stating that the temporary guardianship and conservatorship had expired and ordering that Looby "cease and desist from acting as or representing himself" to be Larson's temporary guardian and conservator.

The court filed an order on December 22, 2004, scheduling a hearing for January 27, 2005, on Wilson's motion and stating that as Wilson was presently still attorney of record for Larson, it declined to hear Badura, Cullan, and Meisinger's application for findings and order. The court stated that it additionally declined to hear Badura, Cullan, and Meisinger's December 22, 2004, application for findings and order because the record did not reflect the required written notice of hearing to all attorneys of record. The court therefore ordered that no hearing would be held on the application for findings and order unless or until (1) Wilson was allowed leave to withdraw, (2) the application was set for hearing, and (3) notice of such hearing was provided to all attorneys of record.

Looby later filed a motion to restrict assets of the ward wherein Looby asserted that he had reason to believe Larson might withdraw funds in the immediate future in a manner contrary to his best interests. The court granted Looby's motion on December 29, 2004.

That same date, in the district court for Cass County, Looby filed an action against Toman and the Cass County Bank seeking a declaratory judgment that the warranty deed transferring 100 acres of Larson's farmland to Toman was null, void, and wholly without effect. The complaint alleged that the deed was a result of undue influence over Larson, who, at the time of the execution of the deed, was "so weak and unbalanced that he could not understand or comprehend the purport and effect of the execution of the deed."

On January 7, 2005, Wilson filed an application for direction and notice of hearing stating that she had received written notice from Larson requesting that she resign and had prepared the application for withdrawal; however, she subsequently came to question whether her withdrawal would be permissible under the

Code of Professional Responsibility. Looby filed a response to this motion and Wilson's original application to withdraw, questioning Larson's mental capacity to dismiss counsel.

Toman entered his first motion with the court on January 10, 2005, by way of a motion to terminate temporary guardianship and dismiss the petition for appointment of temporary guardian and conservator and permanent guardian and conservator. Attached thereto was an alleged power of attorney for health care signed by Larson on November 5, 2003, and appointing Toman. The health care power of attorney stated that Larson authorized Toman "to make health care decisions for me when I am determined to be incapable of making my own health care decisions." Also attached was a durable power of attorney document dated November 5, 2003, designating Douglas Duey as true and lawful attorney in fact and authorizing Duey to handle Larson's financial affairs in numerous respects and to do all other things necessary in connection with a general power to act on Larson's behalf. The document further stated that in the event Larson should become incapacitated to the extent that he were unable to make or communicate responsible decisions concerning his person, then his attorney in fact would have all the power and authority of a guardian as specified in the Nebraska Probate Code. Toman alleged that pursuant to Neb. Rev. Stat. § 30-2620 (Cum. Supp. 2004), the attached powers of attorney showed that the appointment of a temporary guardian and conservator and permanent guardian and conservator for Larson was not the least restrictive alternative available for Larson's continuing care or supervision.

Looby later filed an objection to the motion to terminate temporary guardianship and dismiss the petition for appointment of temporary guardian and conservator and permanent guardian and conservator. Looby asserted that Toman was not an "interested person" as defined by Neb. Rev. Stat. § 30-2209(21) (Cum. Supp. 2004) and furthermore, that Toman had a conflict of interest in serving as a fiduciary for Larson as evidenced by the 100-acre land transfer to Toman.

Badura and Meisinger filed a request for expedited hearing regarding entry of appearance of counsel for Larson. The request set forth the allegations previously made in the motion to show

cause and recognize counsel and made the further allegation that Larson had stated he felt like he was "in prison" and wished to be allowed to communicate fully and freely with Badura and Meisinger, as his attorneys. Attached to the request were two affidavits. First, the affidavit of Ronald D. Svoboda, attorney at law, was presented, wherein Svoboda testified that he had first met Larson on September 30, 2003, to discuss estate planning. Svoboda stated that after "several telephone calls and office consultations," in November 2003, he prepared on Larson's behalf a last will and testament, durable power of attorney, revocation of a prior durable power of attorney, and other documents. Svoboda stated that during all the discussions he had with Larson between September 30 and November 11, Larson appeared competent to execute all the documents that he had signed at that time. The other affidavit attached to Badura and Meisinger's request was that of a man who testified that he had known Larson for many years as a neighbor; that Larson appeared competent; and that as of December 2 or 3, 2004, Larson had been moved to a different room at a nursing home where his new roommate was nonconversant and where no one was allowed to visit Larson without being first cleared by Prokupek. The request asked that the court enter Badura and Meisinger as attorneys for Larson forthwith and that they be allowed as his attorneys to freely communicate with Larson without interference or impediment.

On January 11, 2005, there was a hearing in the county court on Badura, Cullan, and Meisinger's motion to show cause and recognize counsel. Also discussed was Toman's motion to terminate temporary guardianship and dismiss the petition for appointment of temporary guardian and conservator and permanent guardian and conservator. Present at court were Larson, Looby and his two attorneys, the GAL, Badura, Cullan, Meisinger, Toman's attorney, Prokupek, the ombudsman with the Eastern Nebraska Office on Aging, and the state's long-term care ombudsman. Wilson left early due to a scheduling conflict and was not present during the hearing. Neither Duey nor counsel representing him was present.

At this nonevidentiary hearing, Prokupek described the "appalling" amount of money being expended from Larson's estate to support eight attorneys and the fact that Badura, Cullan, and

Meisinger had, for 24 hours, without notifying her where he was, removed Larson from the nursing home where he was staying. Speaking half to the court and half to Larson, she described that Larson was being dragged in and out of nursing homes and to court hearings and that he did not even know why he was there. Larson responded directly to Prokupek that he did "know what they're trying to do." Larson was then asked by the court why he thought he was there, to which Larson responded that he was trying to protect his property and that it was his and not Prokupek's. Larson was able to identify Badura and Meisinger by name as two out of the three lawyers he stated that he wished to have represent him, explaining that he had known Meisinger "about all of [Meisinger's] life."

The court repeatedly refused to address any concerns expressed by Badura, Cullan, or Meisinger as to Larson's care, directing them to report any concerns to the GAL and to Looby. When Cullan stated that he wished Larson to be assessed by a health care professional, the court responded that Cullan had no standing because he was not an attorney of record and that he would need Looby's permission for any assessment.

When Cullan expressed his concern that Looby's 90-day tenure as temporary guardian had not validly been extended, the court summarily stated that Looby should continue as temporary guardian and conservator because it was in Larson's best interests that he so continue. Cullan interjected that he did not believe that good cause had been properly shown, to which the court summarily replied that in the court's opinion, it had.

In an order filed January 18, 2005, the county court specifically overruled Badura, Cullan, and Meisinger's motion to show cause and recognize counsel. The court stated that it had no authority to direct Wilson to withdraw as Larson's attorney, that Wilson would remain as Larson's attorney until further court order, that Looby would remain as temporary guardian and conservator until further court order, and that Larson was to remain a resident at his present nursing home until further court order.

On January 14, 2005, Toman filed a motion to recuse the county court judge for the reason that a conflict of interest existed. The attached affidavit of D.C. Bradford, attorney for Toman, stated therein that Bradford represented the plaintiff in

an action against a partnership in which the judge's husband held a partnership interest and was the managing partner. Bradford also testified that he represented the Omaha Housing Authority in an ongoing dispute with a company of which the judge's husband was the president, treasurer, director, and a shareholder.

The GAL filed another interim report, wherein she stated that she "absolutely and vehemently" opposed Badura, Cullan, and Meisinger's request to be appointed as counsel and describing various actions by these attorneys which she believed were contrary to Larson's best interests. Attached to the report were numerous medical reports and evaluations of Larson to support her conclusion that Larson was incapacitated. Badura, Cullan, and Meisinger filed an objection to the interim report and updated report of the GAL and a motion, praying that the interim report and updated report be struck from the record.

Another nonevidentiary hearing was held on January 27, 2005, on Wilson's motion to withdraw and her later motion for direction, on Looby's motion insofar as it related to the request to permanently restrict funds, on Toman's motion to terminate temporary guardianship, and on Toman's motion to recuse. Also addressed was Badura, Cullan, and Meisinger's request for expedited hearing and entry of appearance. While the court first opined that its prior ruling as to the motion to recognize counsel had rendered the request moot, Cullan interjected that it was his understanding that the request had been held in abeyance until a determination as to Wilson's request to withdraw was made. The court, upon finding no ruling in its records, stated that perhaps it still needed to rule on the motion.

The court concluded that Toman was not an interested party, because regardless of any power of attorney which may or may not exist, the potential conflict of interest resulting from the litigation filed by Looby was "an overriding factor which would substantially overrule any reason why this Court should find . . . Toman to be an interested party." The court also noted the fact that Larson did not remember giving the powers of attorney. To this, Bradford responded that Larson's competency at the time of the grant was relevant and he sought to submit the affidavit of Svoboda, the attorney who prepared the powers of attorney at

Larson's request, into evidence. The court rejected the offer for lack of foundation to the effect that Svoboda was an expert in determining mental competency. The court similarly rejected the offer of the affidavit of Bradford regarding the motion to recuse, stating that it did not need to reach this issue due to the determination that Toman lacked standing.

The court was presented with an updated report of the GAL. The court stated:

> I'm marking it as Exhibit 2. Exhibit 2 is received, however for limited purposes of the hearings being heard today not for purposes of — because obviously if this thing goes to trial eventually on the issue of competency and such then you would need to be calling in other witnesses, but for limited purposes of today's hearing . . . .

The court explicitly affirmed that the hearing was not an evidentiary hearing. This updated report largely restated the contents of the other reports outlined above, with more recent observations of Larson's further mental decline and opinions as to how the court should rule on the various motions before it. Attached to this updated report were the two previous reports and all the exhibits attached thereto. The court overruled objections, apparently made by Badura, Cullan, and Meisinger, that the reports were pejorative and inaccurate.

The court overruled Wilson's request to withdraw. The court stated that regardless of what Larson wanted, it was the court's decision whether to allow counsel of record to withdraw. The court explained that if Larson were mentally competent, then he was "playing games with this Court by going through a succession of various attorneys," having spoken to no fewer than four lawyers, which caused delays and increased costs. The court stated that sometimes the court needed to "put the clamps on a client who wants to keep changing lawyers simply to delay matters." If, the court explained, on the other hand, Larson was not competent, then "these lawyers are playing games with . . . Larson and I need to look at . . . Larson's best interest."

At this point, Badura, Cullan, and Meisinger made an oral motion asking the court to allow them to join Wilson as cocounsel. The GAL and counsel for Looby objected, and the court overruled Badura, Cullan, and Meisinger's motion to join as

cocounsel. Badura, Cullan, and Meisinger's request for an expedited hearing was summarily overruled because of the court's refusal to allow those parties to be recognized as interested parties. The court's order reflecting these rulings was file stamped February 8, 2005.

A petition by Looby to revoke Toman's medical care power of attorney was filed February 9, 2005. On February 24, Toman filed a notice of appeal from what he described as the court's February 7 order.

On February 25, 2005, a notice of appeal was filed on behalf of Larson "by and through the counsel of his choice," Badura, Cullan, and Meisinger. The notice stated that Larson was appealing from the county court's January 22 order refusing to allow Larson's attorneys to represent him. On March 1, Badura, Cullan, and Meisinger filed a "Corrected Notice of Intention to Prosecute Appeal," stating that they were appealing from the county court's January 27 order refusing to allow them to appear as attorneys of record.

On April 1, 2005, the county court issued an order suspending Toman and Duey's powers of attorney pending an evidentiary hearing and ordering that Looby was to make all medical and health care decisions for Larson as part of his duties as temporary guardian. The court noted that an emergency existed because those providing medical care to Larson needed to know the proper person to make decisions on his behalf. On April 28, the county court scheduled an evidentiary hearing to be held on July 12 on the petition to revoke medical care power of attorney and on the petition for appointment of a permanent guardian and conservator. The order specifically found that Toman and Duey were interested persons in the guardianship proceedings and petition to revoke medical care power of attorney. It did not list Toman as an interested person in the conservatorship.

### III. ASSIGNMENTS OF ERROR

Toman assigns that the county court erred in (1) determining that Toman has no standing, (2) overruling Toman's motion to recuse, (3) overruling Toman's motion to terminate temporary guardianship and dismiss the petition for appointment of temporary guardian and conservator and permanent guardian and

conservator, and (4) failing to receive into evidence the affidavits of Bradford and Svoboda.

Badura, Cullan, and Meisinger filed an appellees' brief on behalf of Larson, assigning that the county court erred in (1) not allowing them to enter their appearance and represent Larson and (2) not allowing them to represent Larson as cocounsel with Wilson.

## IV. STANDARD OF REVIEW

■ Statutory interpretation presents a question of law in which an appellate court has an obligation to resolve the questions independently of the conclusion reached by the trial court. See *Hall v. City of Omaha*, 266 Neb. 127, 663 N.W.2d 97 (2003).

## V. ANALYSIS

### 1. TOMAN

#### (a) Standing

■ Toman first assigns that the county court erred in determining that he lacked standing. Before addressing the county court's decision to dismiss Toman for lack of standing, we first must determine that the order was in fact a final, appealable order. For an appellate court to acquire jurisdiction of an appeal, there must be a final order entered by the tribunal from which the appeal is taken. *Saunders County v. City of Lincoln*, 263 Neb. 170, 638 N.W.2d 824 (2002). The three types of final orders which may be reviewed on appeal are (1) an order which affects a substantial right and which determines the action and prevents a judgment, (2) an order affecting a substantial right made during a special proceeding, and (3) an order affecting a substantial right made on summary application in an action after judgment is rendered. *In re Trust of Rosenberg*, 269 Neb. 310, 693 N.W.2d 500 (2005).

■ The court's order of dismissal was made in a special proceeding. Special proceedings include every special civil statutory remedy not encompassed in civil procedure statutes which is not in itself an action. See *id*. We have described an action as any proceeding in a court by which a party prosecutes another for enforcement, protection, or determination of a right or the redress or prevention of a wrong involving and requiring the

pleadings, process, and procedure provided by statute and ending in a final judgment. See *id.* Every other legal proceeding by which a remedy is sought by original application to a court is a special proceeding. *Id.* Proceedings initiated pursuant to Neb. Rev. Stat. § 30-2619 (Cum. Supp. 2004), to appoint a guardian, and Neb. Rev. Stat. § 30-2633 (Cum. Supp. 2004), to appoint a conservator, are special proceedings. See *Hall v. Hall,* 122 Neb. 228, 239 N.W. 825 (1932).

■ Having determined that there was a special proceeding, we next consider whether a substantial right was affected. We have stated that a substantial right is affected if the order affects the subject matter of the litigation, such as diminishing a claim or defense that was available to an appellant prior to the order from which an appeal is taken. *Thompson v. Kiewit Constr. Co.,* 258 Neb. 323, 603 N.W.2d 368 (1999). Looby asserts that the court's order did not affect a substantial right because under Neb. Rev. Stat. § 30-3420(5)(b) (Reissue 1995), a power of attorney supersedes any guardianship proceedings to the extent that the proceedings involve the right to make health care decisions.

A peremptory denial of permission to file a claim is a final, appealable order. *In re Estate of Emery,* 258 Neb. 789, 606 N.W.2d 750 (2000). In *In re Estate of Snover,* 233 Neb. 198, 443 N.W.2d 894 (1989), we held that a right conferred by statute upon persons interested in a decedent's estate to petition the county court to remove the personal representative was a substantial right. Clearly, Toman's *asserted* right under the probate code to intervene in guardianship and conservatorship proceedings is a substantial right. Toman need not demonstrate the underlying merits as to how he actually falls within the grant of this substantial right in order for its denial to be reviewable as a final, appealable order. Similarly, he need not, as Looby suggests, show that his powers pursuant to the health care power of attorney are in jeopardy.

However, although Toman appealed from a final, appealable order, we ultimately do not address Toman's standing in the guardianship and conservatorship proceedings, because this issue is moot. During oral arguments, Toman explicitly stated that he was not an interested party with regard to the conservatorship. Rather, his only assertion as to standing was with regard

to the guardianship. Accordingly, the merits of Toman's standing as to the conservatorship are not before us, as they have been waived. As to the guardianship proceedings, we note that the court issued a later order specifically stating that Toman was an "interested person" as to both the guardianship proceedings and the petition to revoke his medical power of attorney.

■ A case becomes moot when the issues initially presented in the litigation cease to exist, when the litigants lack a legally cognizable interest in the outcome of litigation, or when the litigants seek to determine a question which does not rest upon existing facts or rights, in which the issues presented are no longer alive. *Swoboda v. Volkman Plumbing*, 269 Neb. 20, 690 N.W.2d 166 (2004). Because, after Toman's appeal was perfected, the court issued an order finding that Toman did have standing as to the guardianship proceedings, any dispute in Toman's appeal as to his standing in the guardianship proceedings no longer exists.

### (b) Recusal

■ Toman next asserts that the court erred in denying his motion to recuse. The record reflects, however, that the court never ruled on Toman's motion to recuse. Instead, the court stated that it need not decide the issue because it was rendered moot by its decision as to Toman's lack of standing. An appellate court will not consider an issue on appeal that was not passed upon by the trial court. *Professional Bus. Servs. v. Rosno*, 268 Neb. 99, 680 N.W.2d 176 (2004). While the record reflects that the court later determined Toman to have standing, there is no evidence that Toman renewed his motion to recuse. Had he done so, presumably, in accordance with the court's prior rationale, the court would have addressed the merits of Toman's recusal motion. In short, Toman assigns error to a ruling that the court never actually made, having refused to rule on a ground that is no longer pertinent. Under such circumstances, we do not address Toman's assignment of error that the court erred in denying his motion to recuse.

### (c) Motion to Dismiss and Svoboda Affidavit

Finally, Toman asserts that the county court erred in failing to grant his motion to dismiss the guardianship and conservatorship

proceedings and in failing to receive into evidence the affidavit of Svoboda, the drafting lawyer for Toman's health care power of attorney. These issues were never ruled upon because of the court's determination that Toman lacked standing, nor do they bear upon the correctness of the court's order from which this appeal was taken, the dismissal of Toman for lack of standing. See *State v. Loyd*, 269 Neb. 762, 696 N.W.2d 860 (2005) (our jurisdiction over final, appealable order extends to issues that bear on correctness of that order). As such, these issues are not properly before us in this appeal.

### 2. BADURA, CULLAN, AND MEISINGER

■ We next address Badura, Cullan, and Meisinger's purported cross-appeal. Badura, Cullan, and Meisinger filed a "Brief of Appellee Everett D. Larson" with this court. While assignments of error are made, there is no designation of a cross-appeal. In *In re Interest of Natasha H. & Sierra H.*, 258 Neb. 131, 602 N.W.2d 439 (1999), we refused to address assignments of error in an appellee's brief not designating a cross-appeal. We explained that "the appellate courts of this state have always refused to consider a prayer for affirmative relief where such a claim is raised in a brief designated as that of an appellee" and "have repeatedly indicated that a cross-appeal must be properly designated, pursuant to rule 9D(4), if affirmative relief is to be obtained." *Id.* at 145-46, 602 N.W.2d at 450-51. Neb. Ct. R. of Prac. 9D(4) (rev. 2001) provides:

> Where the brief of appellee presents a cross-appeal, it shall be noted on the cover of the brief and it shall be set forth in a separate division of the brief. This division shall be headed "Brief on Cross-Appeal" and shall be prepared in the same manner and under the same rules as the brief of appellant.

Parties wishing to secure appellate review of their claims for relief must be aware of, and abide by, the rules of this court and the Nebraska Court of Appeals in presenting such claims. *In re Interest of Natasha H. & Sierra H., supra.* Any party who fails to properly identify and present its claim does so at its peril. *Id.* Badura, Cullan, and Meisinger have not complied with the rules of this court, and we therefore do not address their assignments of error.

## 3. Plain Error

The issues properly presented by the parties have thus been addressed. However, we note that the record before us raises many concerns with regard to the manner in which the court has conducted its proceedings. Most egregious is the court's failure to hold an evidentiary hearing on Larson's competency during the approximately 8 months of proceedings which took place under a temporary guardianship and conservatorship.

Section 30-2619(b) states that upon the filing of a petition for a finding of incapacity and appointment of a guardian, the court "shall set a date for hearing on the issues of incapacity." Section 30-2619(d) provides:

> The person alleged to be incapacitated is entitled to be present at the hearing in person and to see and hear all evidence bearing upon his or her condition. He or she is entitled to be present by counsel, to compel the attendance of witnesses, to present evidence, to cross-examine witnesses, including the court-appointed physician and the visitor appointed by the court pursuant to sections 30-2619.01 and 30-2624, and to appeal any final orders or judgments. The issue may be determined at a closed hearing only if the person alleged to be incapacitated or his or her counsel so requests.

Under § 30-2626(a), if an emergency exists, a temporary guardian "to address the emergency" may be appointed by ex parte order of the court "pending notice and hearing." Under § 30-2626(e), the temporary guardianship shall terminate at the end of the 90-day period in which the temporary guardianship is valid, or at any time prior thereto, if the court deems the circumstances leading to the order for temporary guardianship no longer exist, or if an order has been entered as a result of a hearing pursuant to § 30-2619 which has been held during the 90-day period. Provision is made for the extension of the 90-day period "[f]or good cause shown." § 30-2626(d).

Read together, these statutes provide that an evidentiary hearing should be held expediently on a guardianship or conservatorship petition and that temporary guardians and conservators are intended to exercise their powers in a limited manner and for a limited period of time. We have recognized in guardianship proceedings that a true evidentiary hearing is required to support

a finding of incompetency. See, *In re Trust of Rosenberg*, 269 Neb. 310, 693 N.W.2d 500 (2005); *In re Guardianship & Conservatorship of Trobough*, 267 Neb. 661, 676 N.W.2d 364 (2004). This rule cannot be circumvented by continuous extensions of a temporary guardianship, nor are numerous reports by a GAL a substitute for an evidentiary hearing.

While § 30-2626(d) does provide that the 90-day temporary guardianship period may be extended for good cause shown, it is hard to imagine what "good cause" could justify a delay of 8 months. Regardless, it cannot be said that the court's summary conclusions as to good cause and its orders extending the temporary guardianship and conservatorship until further court order qualify as a showing of good cause sufficient to circumvent the alleged incapacitated person's right to a speedy resolution of whether, in fact, a need exists to restrict his or her independence to the extent exercised by a temporary guardianship or conservatorship.

Here, Larson has clearly asserted that he is not incapacitated, at least not to the extent asserted by the petition for the appointment of a guardian and conservator. Yet the court, under the advice primarily of the GAL, appears to treat Larson's complete incompetence as a foregone conclusion. Without giving Larson the benefit of an evidentiary hearing to determine competency, the court ignored Larson's expressed wishes regarding Looby's not being his guardian and conservator. The court ignored Larson's expressed wishes as to who his attorneys of record should be. The court refused to allow Larson to dismiss Wilson, despite the fact that Wilson had long since ceased to advocate for her client's expressed desires or to pursue Larson's right to an evidentiary hearing. Instead, the court allowed Looby, for an extended period of time, almost unlimited powers as temporary guardian and conservator over Larson's personal liberty and his financial affairs.

The fact of Looby's extensive powers as temporary guardian and conservator also makes plain the fact that Looby's powers were not, as the statutory scheme mandates, limited to those powers necessary to address an emergency. Under § 30-2626(a), an ex parte order appointing a temporary guardian is allowed only in order to address an emergency, and "[t]he order and

letters of temporary guardianship shall specify the powers and duties of the temporary guardian *limiting the powers and duties to those necessary to address the emergency.*" (Emphasis supplied.) Likewise, § 30-2630.01(a) states that a temporary conservator may be appointed "to address the emergency." Here, the reference made to an "emergency" in Prokupek's petition was the need for the doctors to have someone in place to make appropriate medical decisions. The petition also stated that Larson needed someone to take care of his financial dealings, although it failed to describe to what extent such dealings constituted an emergency.

In *Becker v. Rogers*, 235 Ark. 603, 361 S.W.2d 262 (1962), the court, addressing language similar to that found in the Nebraska statutes, noted that a temporary guardian was designed, under the probate code, to take care of emergencies. The court explained that "[t]he principal purpose of a temporary appointment is to take care of urgent and emergent matters that have arisen, and where prompt action is essential before the legal requirements for the appointment of a permanent guardian can be met." *Id.* at 608, 361 S.W.2d at 265. Thus, the court illustrated that, for example, instances could arise where a delay would cause irreparable damage to the estate of an alleged incapacitated person.

Here, while certain actions of the temporary guardian concerning Larson's medical care and financial dealings were arguably necessary, it is hard to imagine that other actions, such as the separate suit against Toman to set aside the 100-acre land transfer, were essential to any urgent matter. Of course, the court did not make any specific findings as to emergency matters, nor did it make any attempt to limit the temporary guardian and conservator to such matters. Accordingly, we have little to review.

It is clear that the failure of the court to follow the statutory mandates with regard to the limited nature of the powers and duties of the temporary guardian and conservator, as well as its failure to follow the mandate of a timely evidentiary hearing on competency, constitutes plain error. Plain error is error plainly evident from the record and of such a nature that to leave it uncorrected would result in damage to the integrity, reputation, or fairness of the judicial process. *In re Interest of Mainor T. & Estela T.*, 267 Neb. 232, 674 N.W.2d 442 (2004).

We determine that the appropriate disposition of this appeal is to remand the cause to the trial court with directions to expedite an evidentiary hearing on Larson's competency and what permanent arrangements, if any, are necessary to protect Larson if he is shown to be incapacitated. In the meantime, the court is directed to limit Looby's authority as guardian and conservator to those powers necessary to address the emergency alleged to exist in the petition that resulted in his appointment. Until Larson is determined to be incapacitated, we further direct the court to honor his election as to whom he wishes to represent him.

## VI. CONCLUSION

We decline to address the parties' assignments of error, as none of the issues raised are properly before us. We remand the cause with directions for the court to conduct an immediate evidentiary hearing as set forth above.

REMANDED WITH DIRECTIONS.