IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

PAT THOMAS CONSTR. V. DOBSON BROTHERS CONSTR. CO.

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

PAT THOMAS CONSTRUCTION, INC., A NEBRASKA CORPORATION, APPELLANT,

V.

DOBSON BROTHERS CONSTRUCTION COMPANY, APPELLEE.

Filed March 17, 2020.    No. A-18-1019.

Appeal from the District Court for Lancaster County: JODI L. NELSON, Judge. Affirmed.

Benjamin W. Shanahan, of Sohl Law Office, for appellant.

John P. Weis, of Wolfe, Snowden, Hurd, Ahl, Sitzmann, Tannehill & Hahn, L.L.P., for appellee.

PIRTLE, RIEDMANN, and WELCH, Judges.

PIRTLE, Judge.

INTRODUCTION

This is an appeal from a bench trial in the district court for Lancaster County over 8 days. We affirm the decision rendered by the district court finding no error.

BACKGROUND

Pat Thomas Construction, Inc. (PTC), sued Dobson Brothers Construction Company (Dobson) alleging Dobson modified the original construction contract by changing the procedure for the submission, review, approval, denial, and payment of "change orders," rendering the original "change order" process provisions void. At the conclusion of the trial, the district court found that PTC had failed to meet its burden of proof that the original contract had been modified and entered judgment in favor of Dobson. The evidence, consisting of over 1,400 pages of

- 1 -

testimony, and 274 exhibits, was uncontroverted that nothing in the conduct of the parties constituted a modification of the subcontractor agreement.

The parties entered into a written contract on May 17, 2010, which was a "subcontract" to a contract between Dobson, the State of Nebraska Department of Roads, the federal government, and the City of York, Nebraska (the City). Dobson was the general contractor on the project pursuant to a written contract between Dobson and the City. The City was the "owner" of the project. Pursuant to the subcontract between Dobson and PTC, PTC would be responsible for the installation of the water main and related sewer services in exchange for $380,576. PTC was ultimately paid a total of $420,093.08.

In its complaint, PTC alleged Dobson modified the subcontract during its term in order to meet its obligations as general contractor. PTC alleged these changes resulted in PTC's performance of additional services and providing additional materials at Dobson's request, and when PTC requested payment for these additional services, Dobson failed to make payment in full. PTC alleged it was still owed $256,730.75 for these additional services and materials.

The subcontract provided:

The contract between Contractor and Owner is hereinafter referred to as the "Prime Contract." A copy of the Prime Contract, consisting of the agreement between the Owner and Contractor and other contract documents including drawings, specifications, general conditions, special conditions, or work and other documents has been made available to the Subcontractor *and by this reference is made a part of this Subcontract.* Subcontractor acknowledges review of all such documents relevant to Subcontractor's scope of work and *the Subcontractor agrees to be bound to the Contractor and the Owner by the terms and provisions thereof.*

(Emphasis supplied.) The prime contract identified the City as the Owner and that the City's "representative is responsible for interpretation of the plans, specifications, inspections, testing and acceptance of materials, approval of the work, and final acceptance of the project." Jeff Sockel, a licensed civil engineer, was hired as the "project manager and engineer" and served as the representative of the City under the prime contract. As project manager, Sockel was responsible for the "final estimate utilized to compensate the Contractor for the performance of the work." The prime contract makes clear that the authority for approval of any changes is Sockel's, and his alone. Pat Thomas, on behalf of PTC, testified he was aware that the owner of the project, by and through Sockel, was responsible for approval of all change orders.

The evidence presented by PTC did not go beyond which change orders were unpaid. The uncontroverted evidence presented by Dobson clearly established the processes for submitting change orders specified in the prime contract, and made a part of the subcontract, remained operational and that PTC never availed itself of any of the remedies available when Sockel denied payment of several of these change orders. After concluding PTC failed to meet its burden of proof on the allegations of modification in its complaint, the district court entered judgment in favor of Dobson.

## ASSIGNMENTS OF ERROR

PTC does not specifically assign errors in accordance with Nebraska's rules of appellate procedure. However, an appellate court may, at its option, notice plain error. *United States Cold Storage v. City of La Vista*, 285 Neb. 579, 831 N.W.2d 23 (2013). We elect to do so in this case.

## STANDARD OF REVIEW

The decision to proceed on plain error is at the discretion of the appellate court. *Steffy v. Steffy*, 287 Neb. 529, 843 N.W.2d 655 (2014). We choose to review the record for plain error, which is error plainly evident from the record and of such a nature that to leave it uncorrected would result in damage to the integrity, reputation, or fairness of the judicial process. *Id.*

Where credible evidence is in conflict on a material issue of fact, the appellate court considers, and may give weight to, the fact that the trial court heard and observed the witnesses and accepted one version of the facts rather than another. *Id.* In reviewing a judgment awarded in a bench trial of a law action, an appellate court does not reweigh evidence, but considers the evidence in the light most favorable to the successful party. *Hutchison v. Kula*, 27 Neb. App. 96, 927 N.W.2d 373 (2019) (petition for further review denied May 28, 2019).

## ANALYSIS

On appeal, PTC alleges the original contract was an "unconscionable contract of adhesion" and that Dobson threatened PTC into performing work which resulted in Dobson's unjust enrichment to the detriment of PTC. None of these allegations were made at the time of trial, nor was the complaint ever amended to include them. Accordingly, these claims are not properly before this court and will not be considered. See, *Carlson v. Allianz Versicherungs-AG*, 287 Neb. 628, 844 N.W.2d 264 (2014); *Dossett v. First State Bank*, 261 Neb 959, 627 N.W.2d 131 (2001).

But perhaps most fatal to PTC's appeal is its failure to include an assignment of errors section in its brief. Therefore, we have limited our review to whether or not the district court committed plain error.

Parties who wish to secure appellate review of their claims must abide by the rules of the Nebraska Supreme Court. *In re Guardianship & Conservatorship of Larson*, 270 Neb. 837, 708 N.W.2d 262 (2006). Any party who fails to properly identify and present its claim does so at its own peril. *Id.*

PTC's brief to this court does not include a "separate, concise statement of each error a party contends was made by the trial court." See Neb. Ct. R. App. P. § 2-109(D)(1)(e). This appellate procedural rule also requires that the assignment of errors section of the brief be located after a statement of the case and before a list of controlling propositions of law. Here, errors are specified only in the argument section. The Supreme Court has previously held that assignments of error consisting of headings or subparts of the argument section do not comply with the mandate of § 2-109(D)(1)(e). *In re Interest of Jamyia M.*, 281 Neb. 964, 800 N.W.2d 259 (2011). In this situation, an appellate court may proceed as though PTC had failed to file a brief or, alternatively, may examine the proceedings for plain error. See *id.*

We have reviewed the exhibits presented to the district court and the uncontroverted testimony of Sockel, the project manager, and have concluded the district court did not err in

finding that the contract was not modified. We have considered the uncontroverted testimony of Pat Thomas, on behalf of PTC, which describes his understanding and acceptance of the fact that Sockel was solely responsible for deciding whether change orders were approved. We did not find any documents nor discover any testimony in the transcript of the proceedings which described any modification of the process for payment approval and actual payment for change orders under the contract. "Modification" or "modify" appears in the transcript a total of four times, and only then because the term has been incorporated into a question by one of the lawyers. No witness for any party ever describes any modification of any process for anything. For example, this excerpt from cross examination of Pat Thomas illustrates PTC's understanding of the process for getting paid for a change order:

> Q. And your understanding then was that Dobson, as the general contractor, would submit that change order request to Jeff Sockel as the construction engineer; correct?
> A. Correct.
> Q. Okay. And then your understanding was that Jeff Sockel would make a decision as to whether or not your change order would be approved or denied or modified. But the decision would be Jeff's; correct?
> A. I -- I -- I'm not positive exactly, again, who Jeff had to talk to and stuff.
> Q. I didn't ask that. I --
> A. So I don't know if Jeff solely would be in charge of saying yes or no.
> Q. But your understanding was that the decision would come from him.
> A. Yes.
> Q. Be relayed back to Dobson Brothers, who then would inform you of what Jeff Sockel's decision on the change order was; correct?
> A. Yes.

Pat Thomas testified he understood the process for submitting a change order and getting paid was exactly how it was described in the subcontractor agreement. We find no evidence supporting PTC's claim that its subcontract with Dobson was ever modified with regard to the process for getting paid for change orders, and therefore conclude the district court did not commit plain error.

## CONCLUSION

The order of the district court entering judgment in favor of Dobson is affirmed.

AFFIRMED.