IN THE NEBRASKA COURT OF APPEALS

## MEMORANDUM OPINION AND JUDGMENT ON APPEAL
### (Memorandum Web Opinion)


NNADOZIE V. CITY OF LINCOLN


NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).


ANGELA NNADOZIE, APPELLANT,

V.

CITY OF LINCOLN, APPELLEE.


Filed June 18, 2024.    No. A-23-578.


Appeal from the District Court for Lancaster County: LORI A. MARET, Judge. Affirmed.

Jeff Carter, of Jeff Carter Law Offices, P.C., for appellant.

Richard C. Grabow for appellee.


MOORE, ARTERBURN, and WELCH, Judges.

ARTERBURN, Judge.

### INTRODUCTION

Angela Nnadozie filed a negligence action against the City of Lincoln (the City) in the district court for Lancaster County, as a result of her involvement in an incident where a light pole owned by the City fell on the front part of the vehicle she was driving forcing her to stop abruptly. After a bench trial, the district court found that as a result of the incident with the light pole, Nnadozie suffered a minor soft tissue back injury. The court ordered the City to pay her $5,973 in economic and noneconomic damages. The court found that Nnadozie did not suffer any other injuries or corresponding damages as a result of the incident. Nnadozie appeals from the district court's order. For the reasons set forth herein, we affirm.

### BACKGROUND

On March 25, 2020, Nnadozie filed a complaint against the City, which owns and operates Lincoln Electric System, a municipal utility. In the complaint, Nnadozie alleged that Lincoln

- 1 -

Electric System, and thereby the City, was negligent in its maintenance of a light pole located on A Street between 18th and 19th Streets. According to Nnadozie, this light pole fell when she was driving on A Street on September 6, 2018, causing damage to the vehicle she was driving and permanent injuries to her neck, lower back, and left knee. Nnadozie asked the district court to award her $35,000 in incurred medical expenses and an additional amount for her past and future pain and suffering.

The City filed a timely answer to Nnadozie's complaint. In the answer, the City acknowledged that its negligence was the cause of the light pole falling near Nnadozie's vehicle. However, the answer also denied that the falling light pole was the proximate cause of any injuries to Nnadozie.

On January 30, 2023, a bench trial was held on the issue of whether the City's negligence was the proximate cause of any injuries to Nnadozie. We recount the evidence presented at the trial which is relevant to this appeal.

The evidence presented at trial revealed that Nnadozie was in a motor vehicle accident a few years prior to the light pole incident. In July 2016, Nnadozie was in a serious motor vehicle accident when a vehicle went through a red light, struck another vehicle, which then struck her vehicle. Nnadozie reported that the accident had resulted in her vehicle being "totaled." About 1 week after the accident, Nnadozie reported having pain in her back, neck, and left knee.

Nnadozie began seeing a chiropractor, Dr. Thomas Green, in August 2016 as a result of the neck and back injuries she suffered in the July accident. Nnadozie received chiropractic treatment on 8 occasions between August 2016 and May 2017. In March 2017, Nnadozie also began receiving treatment from a pain specialist, Dr. Wesley Smeal, for her left knee and her lower back. She also saw an orthopedist for the pain in her knee. An MRI of the knee revealed that Nnadozie was suffering from "a complex tear of the meniscus" and from some arthritis. Nnadozie received a cortisone injection in the knee.

By May 2017, Nnadozie was reporting a reduction in the pain caused by the July 2016 motor vehicle accident, so she stopped attending chiropractic sessions with Green. However, around this same time, she began reporting additional pain in her left shoulder, along with numbness and tingling in her left upper extremity. An MRI of her shoulder revealed a tear in her superior labrum (commonly referred to as a "SLAP" tear), joint arthritis, and mild rotator cuff disease. A subsequent MRI of Nnadozie's cervical spine indicated significant cervical osteoarthritis, which was believed to be causing the numbness in her left upper extremity. In January 2018, Smeal referred Nnadozie to a spine surgeon to inquire about possible treatment for her ongoing neck injury.

Also in early 2018, Nnadozie returned to see Green, complaining of the same symptoms in her neck and back that she had experienced immediately after her July 2016 accident. Green believed she was experiencing a "flare-up" and treated her 8 times, with her last such visit occurring on April 9, 2018. During the chiropractic treatment, Nnadozie again indicated that her pain and symptoms were improving. As such, she discontinued her chiropractic treatment, but understood she was to continue her at-home exercises to control her condition.

In the weeks leading up to the September 2018 light pole incident, Nnadozie again began complaining of worsening symptoms related to her July 2016 motor vehicle accident. On August 20, 2018, Nnadozie cancelled a scheduled appointment with her primary care physician, Dr.

Olubunmi Dada, indicating that the pain in her left knee was so prevalent, she would not be able to make the drive from Lincoln to Omaha to see him. Two days later, on August 22, Dada prescribed Nnadozie additional pain medication for her knee. Also on August 22, Nnadozie returned to see Smeal, reporting pain in her neck, left shoulder, left arm, and left knee. She explained that her pain was easily aggravated. She also reported continuing numbness on her left side. Smeal recommended several courses of treatment at that appointment, including, prescribing an oral steroid, referring Nnadozie to physical therapy, describing some exercises she could perform at home, and reiterating the prior referral to a spine surgeon.

Approximately 2 weeks later, on September 6, 2018, Nnadozie was driving when the light pole fell striking the right front fender of her vehicle. Nnadozie testified that she saw the light pole falling as she approached. She stopped her vehicle suddenly which prevented the pole from landing on the passenger compartment. When law enforcement arrived at the scene, she did not report any injuries as a result of the incident. However, in a handwritten narrative of the accident authored by Nnadozie almost 3 weeks after the accident, she indicated that 1 hour after the accident, she experienced pain in her lower back and neck, which persisted.

Five days after the light pole incident, on September 11, 2018, Nnadozie returned to Green's office for chiropractic services for the first time since April. At this appointment, Nnadozie told Green that she was suffering from pain in her back, hip, neck, and knee. She rated her pain as a five or six out of ten. On her intake forms, Nnadozie indicated that she had been "treating" with Green since 2016, but that prior to the light pole incident, she had shown improvement in her pain.

On September 26, 2018, Nnadozie underwent an electromyography, a test to measure muscle activity in response to nerve stimulation, which had been ordered by Smeal prior to the September 6 light pole incident to help address her shoulder and neck pain. The results of this test revealed that Nnadozie was suffering from chronic nerve root damage, which clearly preexisted the light pole incident. Nnadozie reported to Smeal in early November 2018 that she was "overall notably better" than she had been during her August 22 visit.

Nnadozie returned to see Dada in October 2018. At this appointment, she explained her involvement in the light pole incident and indicated that "she has been feeling some numbness and tingling on her left arm since the recent accident." She also indicated that she had been seeing Green for her neck pain and while her pain was still substantial, she believed Green was helping her. During a follow-up visit with Dada on November 12, Nnadozie expressed that the tingling and numbness on her left side was improving, as was her neck and back pain. She did mention to Dada that she was experiencing some symptoms in her left knee, however, she did not link such symptoms to the light pole incident.

In January 2019, Nnadozie was officially released from Green's care. Green's office notes indicate that Nnadozie expressed that she felt better and that, in his opinion, she did not need any further treatment as a result of the September 2018 light pole incident. Nnadozie did see Green again on April 23, 2019, and a few times thereafter for a flare-up of her pain.

By April 2019, Nnadozie reported to Dada that her knee symptoms were worsening. He referred her to an orthopedic specialist. Nnadozie told the specialist that the pain in her knee began after her July 2016 motor vehicle accident. A second MRI of the left knee was conducted in May 2019. This MRI revealed that the degenerative meniscus tear shown in the prior MRI conducted in March 2017 was essentially unchanged. Nnadozie underwent surgery on May 29, 2019, to repair

her torn meniscus. Notably, there was evidence presented at the trial which suggested that in March 2020, Nnadozie telephoned Dada's office and requested that his records reflect that her knee surgery was necessitated by the light pole incident, rather than by the July 2016 motor vehicle accident.

In November 2019, Nnadozie saw an orthopedic surgeon, Dr. Matthew Dilisio, for her shoulder pain. Nnadozie told Dilisio that her shoulder symptoms had persisted since a July 2016 motor vehicle accident. He diagnosed her as suffering from left shoulder tendinitis, which he described as "a mild degenerative change[ in the] left shoulder." In July 2020, Nnadozie attended an appointment with a neurologist regarding the numbness and tingling on her left side. She reported to the treating neurologist that such symptoms were the result of a motor vehicle accident in 2016. The neurologist again referred her to a spinal surgeon.

During the trial, both parties offered expert medical testimony regarding whether the September 2018 light pole incident had caused or aggravated the injuries to Nnadozie's knee, shoulder, neck, and back.

Nnadozie primarily relied on her treating physicians' expert opinions. Dada opined that the pain in Nnadozie's neck, shoulder, and back originated with the July 2016 motor vehicle accident, but that he assumed these injuries were made worse by the light pole incident, as Nnadozie reported worsening pain in October 2018. Dada also testified to his opinion that the light pole incident made Nnadozie's left knee injury worse, but that he could not definitively say that the light pole incident made knee surgery necessary and inevitable. Dada indicated that his expert medical opinions were based largely on Nnadozie's subjective reports of pain and on her version of her medical history.

Green testified that, in his opinion, Nnadozie's injuries from the July 2016 motor vehicle accident were aggravated by the September 2018 light pole incident.

Dilisio opined that the 2018 light pole incident "significantly aggravated" Nnadozie's preexisting shoulder and cervical spine pathology. He believed that her ongoing treatment was the result of the 2018 incident. However, Dilisio also indicated that Nnadozie suffered from a preexisting tear in her shoulder joint, arthritis, and rotator cuff and biceps disease, all which were probably chronic degenerative conditions, rather than being caused by a traumatic event.

The City offered the testimony of three medical experts, Dr. Ian Crabb, a board certified orthopedic surgeon specializing in knee injuries; Dr. Joel Cotton, a board certified neurologist; and Dr. Edward Fehringer, a board certified orthopedic surgeon specializing in shoulders and elbows.

Crabb performed a review of Nnadozie's medical records related to her left knee injury and resulting surgery. He did not personally examine Nnadozie. Crabb explained that most meniscus injuries are "part of the natural history of degenerative change within the knee" and are not caused by a traumatic injury. He also explained that the meniscus tear in Nnadozie's left knee identified by the February 2017 MRI, would not have healed on its own prior to the September 2018 light pole incident. In fact, he indicated that the MRI conducted after the light pole incident revealed no material differences in the meniscus tear since the prior February 2017 MRI. Crabb opined that the light pole incident had absolutely no effect on Nnadozie's knee condition.

Cotton performed a review of Nnadozie's medical records related to her neck and back injury. Like Crabb, he did not personally examine Nnadozie. Cotton opined that Nnadozie was suffering from a chronic cervical spine condition which was causing her pain and numbness in her left upper extremity. Based on this chronic condition, Cotton believed that Nnadozie would

continue to be symptomatic, but that she may have good days and bad days. Cotton referred to Nnadozie's September 2018 EMG study as evidence that she was suffering from a chronic condition, rather than from a traumatic injury caused by the September 6 light pole incident. According to Cotton, the study showed evidence of chronic nerve root damage that clearly preexisted the accident. Cotton's medical opinion was that the light pole incident may have caused a temporary worsening of Nnadozie's preexisting neck and back symptoms, but that the accident did not cause either a temporary or permanent aggravation of her chronic condition.

Fehringer examined Nnadozie in August 2022 and conducted a review of her medical records related to her reported shoulder injury. Fehringer noted that Nnadozie's shoulder symptoms began in 2016, almost immediately after her 2016 motor vehicle accident. According to the medical records, these symptoms had not fully resolved by the time of the September 2018 light pole incident. In fact, in August, Nnadozie was continuing to report significant shoulder symptoms. Fehringer's reading of Nnadozie's December 2017 MRI of the left shoulder revealed several chronic and degenerative findings, including a tear of the superior labrum, AC joint arthritis, and mild rotator cuff disease. Fehringer did not believe any of these conditions were related to a traumatic injury. Moreover, an MRI conducted in April 2022, revealed the same degenerative changes, rather than evidence of any acute injury. Fehringer opined that the light pole incident did not cause or aggravate any injury to Nnadozie's left shoulder.

After the conclusion of the trial, the district court entered a lengthy and thorough order explaining its findings. The court found that Nnadozie did suffer a minor soft tissue back injury in the September 2018 light pole incident. The court awarded Nnadozie $973, which was the value of ten visits to Green after the accident, in addition to a visit with Dada. The court also awarded Nnadozie $5,000 in noneconomic damages for the injury, including, pain and suffering, anguish, and inconvenience. However, the court found that the injuries to Nnadozie's left knee, left shoulder, and neck, were not caused or aggravated by the light pole incident. In reaching this finding, the court found that the opinions of the City's medical experts regarding causation were more credible than the opinions of Nnadozie's treating physicians. The district court also relied on medical records which affirmatively established that Nnadozie's symptoms were simply a continuation of the conditions she suffered from at least since her motor vehicle accident in 2016. The court entered judgment in favor of Nnadozie for a total of $5,973.

Nnadozie appeals from the district court's order here.

ASSIGNMENTS OF ERROR

While Nnadozie appeals to this court, she does not assign any errors in her brief on appeal.

STANDARD OF REVIEW

An alleged error must be both specifically assigned and specifically argued in the brief of the party asserting the error to be considered by an appellate court. *State v. Dill*, 300 Neb. 344, 913 N.W.2d 470 (2018). An appellate court does not consider errors which are argued but not assigned. *Id*. Where a party fails to comply with the court rules requiring a separate section setting forth the assignments of error, an appellate court may proceed as though the party failed to file a brief entirely or, alternatively, may examine the proceedings for plain error. *Wilson v. Wilson*, 23 Neb. App. 63, 867 N.W.2d 651 (2015).

## ANALYSIS

Nnadozie does not assign any errors in her brief. She argues generally in her brief that the district court erred in accepting the opinions of the City's expert witnesses regarding the proximate cause of her injuries and disregarding the opinions of her treating physicians. Essentially, Nnadozie argues that her treating physicians were more credible than the paid defense witnesses. Because she failed to assign any error and because we do not find plain error in the record, we affirm the district court's order.

Parties who wish to secure appellate review of their claims must abide by the rules of the Nebraska Supreme Court. *Steffy v. Steffy*, 287 Neb. 529, 843 N.W.2d 655 (2014). Any party who fails to properly identify and present its claim does so at its own peril and risks the appellate court declining to address the claim. See *id.* See, also, *In re Guardianship & Conservatorship of Larson*, 270 Neb. 837, 708 N.W.2d 262 (2006). A brief on appeal must contain a separate, concise statement of each error. Neb. Ct. R. App. P. § 2-109(D)(1)(e). It has long been the rule that to be considered by an appellate court, an alleged error must be both specifically assigned and specifically argued in the brief of the party asserting the error. See *Mondelli v. Kendel Homes Corp.*, 262 Neb. 263, 631 N.W.2d 846 (2001). See, also, *Wilson v. Wilson, supra*. The failure to properly and specifically assign errors frequently results in appellate courts declining to address an issue raised in the argument of the appellant's brief. See, e.g., *State ex rel. Lemon v. Gale*, 272 Neb. 295, 721 N.W.2d 347 (2006).

Where a party fails to comply with the court rules requiring a separate section setting forth the assignments of error, an appellate court may proceed as though the party failed to file a brief entirely or, alternatively, may examine the proceedings for plain error. *Wilson v. Wilson, supra*. The decision to proceed on plain error is at the discretion of the appellate court. *Id*. In this context, plain error will be noted only when an error is evident from the record, prejudicially affects a substantial right of a litigant, and is of such a nature that to leave it uncorrected would cause a miscarriage of justice or result in damaging the integrity, reputation, and fairness of the judicial process. *State v. Sierra*, 305 Neb. 249, 939 N.W.2d 808 (2020).

With this in mind, we review the proceedings for plain error. We have reviewed the voluminous bill of exceptions in its entirety, including the testimony presented at trial, the deposition testimony of the medical experts, and Nnadozie's extensive medical records. Based upon our review of this evidence, we do not find plain error in the district court's decision that Nnadozie's left knee injury, left shoulder injury, or neck injury were not caused or aggravated by the September 2018 light pole incident. In so finding, we must accept the decision of the district court which found the City's expert medical witnesses to be more credible than the expert witnesses put forward by Nnadozie. In a bench trial of an action at law, the trial court is the sole judge of the credibility of the witnesses and the weight to be given their testimony. *Moreno v. City of Gering*, 293 Neb. 320, 878 N.W.2d 529 (2016).

We note that in making its explicit credibility determinations, the district court explained exactly why it found the City's experts to be more credible. The court's rationale included references to the City's experts having more experience in diagnosing and treating the types of injuries that Nnadozie complained of and the experts' reliance on objective medical testing, rather than on Nnadozie's subjective reports of pain. In addition to the district court's explicit findings,

we note that Nnadozie's medical records provide clear support for the City's expert medical witnesses' opinions. Such records indicate that Nnadozie's injuries to her left knee, left shoulder, and neck, originated much earlier than the September 2018 light pole incident and were most likely degenerative in nature as opposed to being caused by a traumatic event. Even if caused by trauma, the evidence supports the court's findings that Nnadozie's reports of pain and discomfort began following her previous motor vehicle accident in July 2016. Since July 2016, Nnadozie had a steady continuation of symptoms which she related to such injuries. While the severity of her pain fluctuated, the nature of her reported symptoms remained virtually unchanged after the light pole incident.

Based on our review of all the evidence presented at the trial, and considering the district court's credibility determinations, we can find no plain error in the district court's decision. We must affirm the court's order awarding Nnadozie only $5,973 for a minor soft tissue injury to her back. The court did not err in failing to award Nnadozie further damages as the evidence supports the court's conclusion that no other injuries were caused or aggravated by the September 2018 light pole incident.

CONCLUSION

Having found no plain error in the district court's decision, we affirm the decision in its entirety.

AFFIRMED.