IN RE GUARDIANSHIP AND CONSERVATORSHIP OF
LEON C. DONLEY, AN INCAPACITATED PERSON.
RAYMOND DONLEY, APPELLANT, V.
LEON C. DONLEY ET AL., APPELLEES.
631 N.W.2d 839

Filed July 20, 2001.    No. S-00-965.

Roger P. Cox and Gregory D. Barton, of Harding, Shultz & Downs, for appellant.

Larry D. Ohs, P.C., for appellee Mary Davis.

WRIGHT, CONNOLLY, GERRARD, STEPHAN, MCCORMACK, and MILLER-LERMAN, JJ.

GERRARD, J.

## NATURE OF CASE

Raymond Donley filed a petition in the county court for Lancaster County to have a guardian and conservator appointed for his father, Leon C. Donley. The appointment of the guardian and conservator was contested by Leon, Leon's wife, and Leon's daughter. Ultimately, the guardianship proceeding was transferred to Colorado and the parties agreed that coconservators would be appointed for Leon in Nebraska. The sole issue presented on appeal is whether the attorneys hired by Raymond, the petitioner, can recover, from Leon's estate, reasonable attorney

fees incurred in the efforts to have a guardian and conservator appointed for Leon.

## FACTUAL BACKGROUND

Raymond is the adult son of Leon and is one of five children born during Leon's first marriage to Raymond's mother. Leon subsequently married Margaret Donley, and the couple had a child during their marriage, Mary Davis. After being married for approximately 30 years, Leon and Margaret were divorced in 1994 but continued living together in the home they occupied during their marriage.

As a result of Leon and Margaret's divorce in 1994, the house and acreage Leon and Margaret lived on in Lincoln were awarded to Leon. The record reveals that the property was in Margaret's name during the couple's marriage and that after the divorce was final, Margaret did not formally transfer title to the property to Leon as required by the divorce decree. Leon and Margaret were remarried on July 8, 1998, and on July 13, Leon and Margaret granted, for $100,000, an option to purchase the acreage and house in Lincoln for $450,000. Margaret testified that the option was granted because the couple had plans to move to Colorado so that they could be closer to Davis. The $100,000 from the sale of the option was used as part of the purchase price for a home in Longmont, Colorado. Margaret testified that she also contributed to the purchase price of the home in Colorado, and the home was titled solely in Margaret's name. The $100,000 from the sale of the option was eventually placed in Leon's conservatorship estate.

Raymond testified that prior to these proceedings, Leon would often visit Raymond's automobile repair shop, just a few blocks from Leon's house in Lincoln. Raymond stated that on many occasions between October 1998 and March 1999, Leon told Raymond that he and Margaret would be moving to Colorado but that Leon did not want to move. Raymond became concerned about his father when Leon came to Raymond's shop one day with two bottles of mouthwash and a bottle of cleaner, handed the bottles to Raymond, and told Raymond that he would not need the bottles anymore because he was moving. Raymond stated that this conversation took place about 10 days after Leon's last expression of his desire not to move to Colorado.

Raymond decided to file the petition for the appointment of a guardian and conservator because he had concerns that things were happening to Leon that Leon did not understand. Raymond stated that he and Leon discussed having someone appointed to look out for Leon's best interests and that Leon thought doing so would be a good idea.

On March 19, 1999, Raymond, through counsel, filed a petition for the appointment of a guardian and conservator for Leon. A temporary guardian and conservator was also requested in the petition for Leon. John McHenry, a lawyer and an independent third party, was suggested in the petition as a suitable guardian and conservator. Raymond thought having an independent party as guardian and conservator would be advisable to avoid potential conflict between the families from Leon's two marriages. In addition to requesting McHenry as the temporary guardian and conservator in the petition, Raymond also had Leon sign a document, which was filed with the county court, nominating McHenry as his guardian and conservator. McHenry was appointed and accepted the position as temporary guardian and conservator.

Leon and Margaret moved to Longmont, Colorado, in early May 1999. Also, on May 6, the county court authorized the sale of Leon's property in Lincoln, where Leon and Margaret had been living, pursuant to the purchase option executed in July 1998. On July 12, 1999, the county court noted that settlement negotiations were progressing, so the case was set for trial on August 31. At a later hearing regarding the allowance of attorney fees, Roger Cox, one of Raymond's attorneys, testified that by August 25, the parties had agreed to settle the case and that the only thing left to do was agree on specific wording in the drafted settlement agreement. Cox stated that on August 26, Cox was informed that Davis had filed petitions for the appointment of a conservator and a guardian in a Boulder County, Colorado, court on August 20 and that the settlement was probably off. The petitions for guardian and conservator in the Colorado court were both signed by Leon.

A hearing on the issue whether the proceedings should be transferred to Colorado was held on September 22, 1999, in the county court for Lancaster County. The county court determined that the guardianship proceeding should be transferred to

Colorado but that the conservatorship proceeding should stay in Nebraska.

The parties eventually filed a joint stipulation for settlement on January 28, 2000, agreeing that McHenry and Davis should be appointed as coconservators for Leon. On February 28, the county court found, by clear and convincing evidence, that a conservator should be appointed for Leon and that there were no less restrictive alternatives available. The county court also found the joint stipulation for settlement to be fair and reasonable. The agreement essentially gave Davis control of the day-to-day spending with respect to Leon and gave McHenry control over how Leon's assets should be invested in the event the coconservators disagreed as to investment of the assets. The final inventory of Leon's estate totaled $841,607.80.

On April 7, 2000, Raymond filed a petition for attorney fees incurred as the petitioner in this matter in the amount of $28,422.02. Briefs in opposition to the payment of fees were filed on behalf of Leon by his attorney as well as by Davis as coconservator. Leon's brief argued that Raymond's attorney's services were not required in this matter because Leon had previously appointed a power of attorney to provide assistance in the future.

It was established at the hearing on the issue of attorney fees that Raymond initially hired the firm of Harding, Shultz & Downs and that there was never an express agreement between that firm and Leon. Further, Cox, an attorney with the Harding, Shultz & Downs law firm, testified that as of the date of the hearing, Raymond had paid the firm $20,000 toward the $28,422.02 incurred by the firm for services the firm had rendered in this matter.

The county court determined that Raymond was not entitled to attorney fees. The court cited *In re Guardianship & Conservatorship of Tucker*, 9 Neb. App. 17, 606 N.W.2d 868 (2000), for the proposition that attorney claims for professional services must be based upon a contract of employment made with the person to be charged. The county court then found that there was never an express or implied contract between Leon and the attorneys employed by Raymond. Therefore, the court ruled that the attorney fees were not to be paid from Leon's estate. Raymond

filed this appeal, and we moved the case to our docket pursuant to our authority to regulate the dockets of the appellate courts.

## ASSIGNMENTS OF ERROR

On appeal, Raymond assigns that the county court erred (1) in ruling that there was no express or implied contract between Leon and the attorneys employed by Raymond and (2) in failing to award Raymond his reasonable attorney fees to be paid by Leon's conservatorship estate.

## STANDARD OF REVIEW

An appellate court reviews probate cases for error appearing on the record made in the county court. *In re Estate of Myers*, 256 Neb. 817, 594 N.W.2d 563 (1999). See *In re Guardianship of Zyla*, 251 Neb. 163, 555 N.W.2d 768 (1996). When reviewing questions of law, an appellate court has an obligation to resolve the question independently of the conclusion reached by the trial court. *Mertz v. Pharmacists Mut. Ins. Co.*, 261 Neb. 704, 625 N.W.2d 197 (2001).

## ANALYSIS

On appeal, Raymond argues that the county court should have ordered attorney fees to be paid from Leon's estate in this case because his attorney's actions benefited Leon's estate and because there is a uniform course of procedure to grant such fees when a petitioner in a guardianship and conservatorship action is ultimately successful. Raymond further argues that attorney fees are appropriate because the petition was ultimately successful, as a guardian and coconservators were appointed for Leon.

The general rule with respect to the award of attorney fees under Nebraska law has been that attorney fees and expenses may be recovered only where provided for by statute or when a recognized and accepted uniform course of procedure has been to allow recovery of attorney fees. See *Nebraska Nutrients v. Shepherd*, 261 Neb. 723, 626 N.W.2d 472 (2001). Raymond argues that attorney fees should be paid out of Leon's conservatorship estate under this general rule. The appellee Davis, on the other hand, asserts that there is no uniform course of procedure in guardianship/conservatorship matters to allow attorney fees for petitioner's attorneys. Moreover, Davis argues that the

county court correctly determined that there was never an express or implied contract between Leon and the attorneys employed by Raymond and that, therefore, there was no basis for the recovery of an attorney fee in this conservatorship proceeding. We find that when the petitioner's good faith actions are a necessary expense to the conservatorship estate, attorney fees are authorized by statute in Nebraska and are compensable under the general rule regarding attorney fees.

While we have never considered the precise issue, we are persuaded by the rule adopted in other states that costs and attorney fees incurred in the good faith initiation of conservatorship proceedings constitute necessaries for the support or benefit of the protected person such that payment of reasonable costs incurred may be assessed against the protected person's estate. See, *In re Estate of Bayers*, 295 Mont. 89, 983 P.2d 339 (1999); *In re Dunn*, 239 N.C. 378, 79 S.E.2d 921 (1954); *Penney v. Pritchard & McCall*, 255 Ala. 13, 49 So. 2d 782 (1950); *Carney v. Aicklen*, 587 S.W.2d 507 (Tex. Civ. App. 1979); *In re Estate and Guardianship of Vermeersch*, 15 Ariz. App. 315, 488 P.2d 671 (1971); *In re Estate of Sherwood*, 56 Ill. App. 2d 334, 206 N.E.2d 304 (1965); *In re Bundy*, 44 Cal. App. 466, 186 P. 811 (1919).

The rationale supporting the rule is that in guardianship/conservatorship cases, the applicant most often acts for and on behalf of one who is unable to act or care for himself or herself. See, *In re Dunn, supra*; *In re Bundy, supra*. Thus, the filing of the petition and the hearing thereon are indispensable steps in the preservation of the protected person's estate. See, *In re Bundy, supra*; *In re Estate and Guardianship of Vermeersch, supra*. It is recognized that when an individual is in need of physical or financial protection, the law must in many instances think and act for him or her. See, *In re Dunn, supra*; *In re Bundy, supra*. The state and society have a significant interest in bringing the estate of individuals in need of protection under the vigil of the county court. See *In re Estate and Guardianship of Vermeersch, supra*. See, also, *Penney v. Pritchard & McCall, supra*. The court, as general conservator of the rights of persons in need of protection, is dependent upon applications being filed by interested persons so that the court may assume control of the estate and preserve it for the protected person. See *In re Bundy, supra*.

■ Further, we note that an action to appoint a conservator is not an adversarial proceeding, but, rather, is a proceeding to promote the best interests of the person for whom the conservatorship is sought. A conservatorship action is uniquely nonadversarial in that everyone involved, including the petitioner and the court, is presumably interested in protecting the interest of the person for whom the conservatorship is sought. See Neb. Rev. Stat. § 30-2630 (Reissue 1995) (conservator may be appointed if trial court is satisfied by clear and convincing evidence that (1) person is unable to manage his or her property effectively and (2) person has property which will be wasted or dissipated unless proper management is provided or that funds are needed for support of person and that protection is necessary to obtain or provide funds). Therefore, in a conservatorship proceeding, the interest to be considered by the court and the principles to be applied are quite unlike those in an ordinary litigation case.

■ Thus, we cannot agree with the appellee that the county court lacked power to assess the costs of the conservatorship proceeding and the petitioner's attorney fees against the alleged protected person's estate. In Nebraska, under Neb. Rev. Stat. § 30-2654(a)(2) (Reissue 1995), a "conservator is to expend or distribute sums reasonably necessary for the support, education, care or benefit of the protected person." Clearly, the cost of initiating a good faith petition for the appointment of a guardian or conservator, where such appointment is determined to be in the best interests of the protected person, constitutes a necessary expenditure on behalf of the protected person. We hold that such costs, including reasonable attorney fees, are compensable out of the conservatorship estate as they are necessary expenditures on behalf of the protected person. Therefore, attorney fees are authorized by statute when a good faith petition results in the appointment of a conservator and, under the general rule regarding attorney fees in Nebraska, may be recovered from Leon's estate. See § 30-2654.

In the instant case, the trial court and the parties agreed that the appointment of coconservators was in the best interests of Leon, and the parties all agreed that the appointment of a guardian was in Leon's best interests. However, in denying Raymond's petition for attorney fees, the county court cited *In*

*re Guardianship & Conservatorship of Tucker,* 9 Neb. App. 17, 606 N.W.2d 868 (2000), and focused on whether there was a contractual relationship between Leon and the law firm Raymond hired to assist him in filing the petition for the appointment of a guardian and conservator. The county court stated that "it is apparent to me that the Courts of this State are taking the position that attorney claims for professional services must rest upon a contract of employment made with the person sought to be charged."

The Court of Appeals, in *In re Guardianship & Conservatorship of Tucker, supra,* granted attorney fees based upon an implied contract between the petitioner's attorney and the protected person. The court, however, did not hold that a contractual relationship was *required* in a guardianship and conservatorship case in order to grant attorney fees to a successful petitioner. In fact, many situations arise in which an incapacitated individual is in dire need of a guardian or conservator, yet he or she contests the guardianship/conservatorship proceeding. In such a case, a successful petitioner who filed an action in good faith would not be entitled to attorney fees under an express or implied contract theory because the protected person would not have accepted the benefit of the attorney's services by agreeing to the protection. Basing the decision whether to grant attorney fees on whether an incapacitated person, who has been adjudged unfit to manage his or her own affairs, has expressly or impliedly entered into a fee agreement is generally not sound policy, given that the incapacitated person's ability to understand and enter into such agreements is often the very question at issue in conservatorship proceedings. Such a rule can only have the effect of encouraging manipulation of incapacitated persons in order to secure an "agreement" that would make fees recoverable. This would be contrary to the interest of the protected person and inconsistent with the nature of the proceedings.

We determine that the existence of an express or implied contractual relationship between a petitioner's attorney and an incapacitated person is not a prerequisite for the award of attorney fees in a guardianship or conservatorship proceeding. Therefore, because the county court erred in concluding that an express or implied contract between Leon and Raymond's attorneys was

necessary prior to the award of attorney fees, we reverse the order of the county court.

Based on the circumstances of the instant case, we conclude that the costs, including reasonable attorney fees, of initiating and prosecuting proceedings that ultimately resulted in the appointment of a guardian and coconservators for Leon should be compensable out of the conservatorship estate as they are necessary expenditures for the benefit of the protected person. See § 30-2654. Because the county court did not address the issue of the amount of attorney fees in this case, we remand the matter to the county court to determine a reasonable fee to be paid from the conservatorship estate to Raymond's attorneys. We remand the cause for a fee determination, keeping in mind that the county court has seen and heard the witnesses and is familiar with the background and intricacies of these proceedings. Moreover, the county court expressly noted in its August 8, 2000, order that there was sufficient evidence presented to the court to allow it to make a determination as to the amount of attorney fees without further hearing.

We note that when an attorney fee is authorized, the amount of the fee is addressed to the discretion of the trial court. See *In re Estate of Stull*, 261 Neb. 319, 622 N.W.2d 886 (2001). To determine proper and reasonable fees, it is necessary for the court to consider the nature of the proceeding, the time and labor required, the novelty and difficulty of the questions raised, the skill required to properly conduct the case, the responsibility assumed, the care and diligence exhibited, the result of the suit, the character and standing of the attorney, and the customary charges of the bar for similar services. See *Schirber v. State*, 254 Neb. 1002, 581 N.W.2d 873 (1998).

## CONCLUSION

For the foregoing reasons, we reverse the order of the county court and remand the cause to the county court for a determination of reasonable attorney fees to be paid to Raymond's attorneys out of the conservatorship estate.

REVERSED AND REMANDED WITH DIRECTIONS.

HENDRY, C.J., not participating.