775 N.W.2d 496 (2009)
2009 ND 195
In the Matter of the CONSERVATORSHIP OF T.K.
E.P., Petitioner and Appellee and
J.K., Petitioner
v.
T.K., Respondent and Appellant and
Alerus Financial, N.A., Conservator.
No. 20090035.
Supreme Court of North Dakota.
November 17, 2009.
*497 Janet M. Gregory, Grand Forks, ND, for petitioner and appellee; submitted on brief.
Constance L. Triplett, Grand Forks, ND, for respondent and appellant; submitted on brief.
SANDSTROM, Justice.
[¶ 1] T.K. appeals from a district court order appointing Alerus Financial as conservator of her estate. We affirm, concluding the district court did not clearly err in finding T.K. needed a conservator and did not abuse its discretion in appointing Alerus as her conservator.

I
[¶ 2] T.K. was born in 1926 and has two adult daughters, E.P. and J.K. T.K.'s estate included farmland near Rochester, Minnesota, which she had been renting to a third party for about $8,000 per year, and about twenty acres near Manvel, where she lived from 1972 until February 2007. J.K. lived with T.K. on the Manvel property from December 2006 until February 2007, when T.K. went to St. Paul to live with E.P. while treating various medical ailments and complications from pneumonia. According to E.P., during that time T.K. stated she did not know what had happened to money in her bank accounts. *498 In November 2007, T.K. returned to the Grand Forks area with J.K. T.K.'s house in Manvel was a converted airport building that had deteriorated over the years and was not then inhabitable, but J.K. purchased a mobile home for the premises with her mother's money and surrounded the mobile home with hay bales for insulation. On December 7, 2007, T.K. executed a durable power of attorney appointing J.K. as her attorney in fact.
[¶ 3] On December 20, 2007, E.P. petitioned to appoint Alerus as a temporary conservator for her mother. E.P.'s affidavit in support of the petition alleged that she believed J.K. was taking financial advantage of T.K. by dissipating assets and that T.K. did not have the mental capacity to understand the situation. The district court appointed Alerus as temporary conservator for T.K., but she thereafter asked the court to vacate the temporary conservatorship.
[¶ 4] At a February 2008 hearing, the parties agreed to allow Alerus to continue as temporary conservator while they negotiated a stipulation for a permanent conservator. When the parties failed to agree on the terms of a permanent conservatorship, the court appointed a guardian ad litem and a visitor. J.K. thereafter petitioned to be appointed permanent conservator of her mother's estate. T.K. claimed she did not need a conservator, but alternatively sought appointment of J.K. as her conservator.
[¶ 5] At an evidentiary hearing, a report from a neuropsychology consultation was introduced, which stated that T.K. had a measurable cognitive decline with memory loss and developing dementia. According to T.K.'s financial records, her assets consisted of monthly social security payments of $1,320, real property, bonds, and other investments. While the conservatorship proceeding was pending, Alerus had assisted T.K. in selling her farmland near Rochester for $824,000, with $600,000 paid upon sale and $224,000 to be paid annually at the rate of $11,200 per year for 20 years. As part of a tax deferred exchange, about $300,000 from the land sale was invested in rental property in Grand Forks, and the remainder was placed in a savings account with Alerus. According to an Alerus representative, the rental property will provide T.K. about $22,000 per year in gross income. At the time of the evidentiary hearing, T.K. and J.K. were living in a home T.K. had purchased in Mayville with the assistance of Alerus, but there was evidence T.K. wanted to clean up and repair the Manvel property so she could live there.
[¶ 6] At the hearing, the guardian ad litem and the visitor filed their reports. The visitor recommended that Alerus continue as T.K.'s conservator; that T.K. be allowed to manage her social security payments; that Alerus prepare a personal services contract for J.K. to provide care for T.K.; and that Alerus oversee renovation of the Manvel home. The guardian ad litem recommended a limited conservatorship with Alerus managing T.K.'s rental property and the $11,200 in annual payments from the sale of the Rochester land; Alerus paying J.K. under a personal services contract for her care of T.K.; T.K. directly receiving and having access to her monthly social security payment; and Alerus paying T.K.'s extraordinary expenses upon approval by its manager. The guardian ad litem's report also recommended that the remaining money from the sale of the Rochester land be put in an account for T.K.'s unlimited access to secure a suitable home for her on the Manvel property with J.K. designated as supervisor for renovation of the Manvel homestead project.
*499 [¶ 7] At the conclusion of the hearing, the guardian ad litem stated that she believed a conservatorship was appropriate but expressed concerns about appointing J.K. as conservator. The guardian ad litem identified concerns about J.K.'s ability to handle large sums of money, her history for making poor decisions, her failure to timely pay taxes, and her recent criminal charge for driving without liability insurance. The guardian ad litem also described a conversation with T.K. in which T.K. stated that she no longer wanted the burden of dealing with her financial affairs. The guardian ad litem stated the "tension" between J.K. and E.P. required a neutral third party conservator with a "good portion of the money accessible" by T.K. The guardian ad litem questioned J.K.'s ability to manage T.K.'s property and stated Alerus was "better qualified" to manage T.K.'s rental property, but "its really important to [T.K.] that [her savings account] be used to provide an appropriate and adequate home for her out on her Manvel property." The guardian ad litem recommended a partial conservatorship and that T.K. have as much input as possible in providing a suitable home on the Manvel property.
[¶ 8] The district court decided T.K. needed a conservator "based on [her] advanced age and mental capacity [and][s]he could be taken advantage of and is vulnerable." The court decided there was good cause to appoint a neutral conservator, because appointing J.K. presented a natural conflict of interest and a neutral conservator could help eliminate conflict between two disagreeing siblings. The court found that, considering the amount and nature of T.K.'s estate, J.K. did not have the qualifications to manage her mother's property, and the court appointed Alerus as T.K.'s conservator. The court allowed T.K. to directly receive her monthly social security and additional funds as determined by Alerus; required Alerus to draft a personal service contract for J.K.'s care and services for T.K. in the amount of $1,500 per month; authorized Alerus to manage the property restoration in Manvel as financially feasible in consultation with T.K.; and ordered fees for the guardian ad litem, visitor, and attorneys to be paid from T.K.'s estate. The court thereafter approved $9,090.32 in attorney fees for E.P.
[¶ 9] The district court had jurisdiction under N.D. Const. art. VI, § 8, and N.D.C.C. §§ 27-05-06 and 30.1-02-02. T.K.'s appeal is timely under N.D.R.App.P. 4(a). This Court has jurisdiction under N.D. Const. art. VI, §§ 2 and 6, and N.D.C.C. §§ 28-27-02 and 30.1-02-06.1.

II
[¶ 10] In Guardianship and Conservatorship of Thomas, 2006 ND 219, ¶ 7, 723 N.W.2d 384, we said the clearly erroneous standard of review applies to a district court's findings of fact in a conservatorship proceeding and the abuse of discretion standard applies to the court's selection of a conservator. "A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if no evidence exists to support the finding, or if, on the entire record, we are left with a definite and firm conviction a mistake has been made." Id. "A court abuses its discretion if it acts in an arbitrary, unreasonable, or unconscionable manner, its decision is not the product of a rational mental process leading to a reasoned determination, or it misinterprets or misapplies the law." Id.

III
[¶ 11] T.K. argues the district court clearly erred in deciding she needed a conservator. She argues there was no proof supporting the requirements for a *500 conservator under N.D.C.C. § 30.1-29-01(2)(a) and (b), which authorizes appointment of a conservator if a person is unable to manage her property and affairs effectively for reasons such as "mental illness, mental deficiency, physical illness or disability, advanced age, chronic use of drugs, chronic intoxication, confinement, detention by a foreign power, or disappearance," or "[t]he person has property which will be wasted or dissipated unless proper management is provided."
[¶ 12] The district court found that T.K. needed a conservator on the basis of her advanced age and mental capacity and that she could be taken advantage of and was vulnerable. Under N.D.C.C. § 30.1-29-01(2), a proposed ward need not be incompetent; rather, that statute specifically authorizes appointment of a conservator if the person is unable to manage her property and affairs because of "advanced age" or "mental deficiency." Although there is some evidence that T.K. could manage her property and that her estate had not been dissipated by J.K., there is also evidence that T.K. is vulnerable and had experienced a cognitive decline with developing dementia, difficulty with spontaneous retrieval of information, and a decline in her memory. According to E.P., T.K. had stated she did not know what had happened to money in her bank accounts. Both the guardian ad litem and the visitor recommended a conservatorship that was limited in some aspects.
[¶ 13] In a bench trial, the district court determines credibility issues, which we will not second-guess on appeal. Buri v. Ramsey, 2005 ND 65, ¶ 10, 693 N.W.2d 619. "`We do not reweigh evidence or reassess credibility, nor do we reexamine findings of fact made upon conflicting testimony. We give due regard to the trial court's opportunity to assess the credibility of the witnesses, and the court's choice between two permissible views of the evidence is not clearly erroneous.'" Id. (quoting Akerlind v. Buck, 2003 ND 169, ¶ 7, 671 N.W.2d 256). We are not left with a definite and firm the conviction the district court made a mistake in finding T.K. needed a conservator, and we conclude the court's finding T.K. needed a conservator is not clearly erroneous.

IV
[¶ 14] T.K. argues there were less restrictive alternatives to a conservatorship and the court erred in failing to appoint J.K., a person who was nominated by T.K. as her attorney-in-fact and who had priority as a qualified family member, as her conservator. T.K. argues her durable power of attorney should be reinstated, which is consistent with her wishes.
[¶ 15] Under N.D.C.C. § 30.1-29-08(1), a district court shall exercise its conservatorship authority "consistent with the maximum self-reliance and independence of the protected person and make protective orders only to the extent necessitated by the protected person's actual mental and adaptive limitations and other conditions warranting the procedure." Section 30.1-29-10, N.D.C.C., outlines priorities for appointment of a conservator and provides in subsection (2) that "[u]nless lack of qualification or other good cause dictates the contrary, the court shall appoint a conservator in accordance with the protected person's most recent nomination in a durable power of attorney."
[¶ 16] Here, the district court found there was good cause to appoint a neutral conservator because of J.K.'s conflict of interest and lack of financial experience. The court recognized T.K. was a "people pleaser" and J.K. did not have the financial qualifications necessary to manage a large estate of more than $800,000. The court found J.K. did not understand the magnitude *501 of the extensive cleanup of the land in Manvel, and Alerus, through its property management team and expertise, was qualified to work on the project in consultation with T.K.
[¶ 17] The district court allowed T.K. to directly receive her monthly social security payments, permitted Alerus to allocate additional funds to T.K. as needed, authorized Alerus to draft a personal services contract in the amount of $1,500 per month for services provided by J.K. to T.K., and allowed Alerus to manage the Manvel property restoration as financially feasible and in consultation with T.K. We conclude the court's decision to appoint Alerus as conservator for T.K.'s estate, with the limitations described in the court's order, was consistent with T.K.'s maximum self-reliance and independence, was the product of a rational mental process leading to a reasoned determination, was not a misapplication of the law, and was not arbitrary, capricious, or unreasonable. We therefore conclude the court did not abuse its discretion in appointing Alerus as conservator of T.K.'s estate with the limitations described in the court's order.

V
[¶ 18] T.K. also argues the district court erred in ordering payment of E.P.'s attorney fees from T.K.'s estate. T.K. asserts E.P.'s attorney was not appointed by the court under N.D.C.C. § 30.1-29-14(2) and was not entitled to attorney fees under that statute. T.K. claims the court should have ordered E.P. to pay her own attorney fees to discourage others from bringing similar sibling disputes.
[¶ 19] "Absent statutory or contractual authority, each party to a lawsuit bears its own attorney fees under North Dakota law." Baukol Builders, Inc. v. County of Grand Forks, 2008 ND 116, ¶ 35, 751 N.W.2d 191. Section 30.1-29-14(2), N.D.C.C., provides "[i]f not otherwise compensated for services rendered, any visitor, lawyer, physician, conservator, or special conservator appointed in a protective proceeding is entitled to reasonable compensation from the estate." The plain language of N.D.C.C. § 30.1-29-14(2) authorizes compensation for a "lawyer ... appointed in a protective proceeding." E.P. initiated this protective proceeding, and her attorney was not "appointed in a protective proceeding" under N.D.C.C. § 30.1-29-14(2). Some courts have recognized, however, that attorney fees incurred in the good-faith initiation of a conservatorship proceeding constitute necessary expenses for the support or benefit of the protected person and reasonable attorney fees incurred may be assessed against the protected person's estate. In re Guardianship of Donley, 262 Neb. 282, 631 N.W.2d 839, 843-46 (2001).
[¶ 20] In Donley, at 844, the Nebraska Supreme Court explained the rationale supporting that rule is that in conservatorship cases, the applicant often acts for and on behalf of a person who is unable to act or care for himself or herself, and the filing of a petition and a hearing on the petition are indispensable steps in the preservation of the protected person's estate. The court recognized the law must think and act for individuals in need of physical or financial protection, and courts are dependent on the filing of petitions by interested persons to assume control of the estate and preserve it for the protected person. Id. The court also recognized an action to appoint a conservator was not truly an adversarial proceeding, because the petitioner and the court were presumably interested in protecting the interests of the person for whom the conservatorship was sought. Id. The court cited Neb. Rev.Stat. § 30-2654(a)(2) (Reissue 1995) for the principle that a conservator may *502 expend or distribute sums reasonably necessary for the support, education, care, or benefit of the protected person and said that "the cost of initiating a good faith petition for the appointment of a guardian or conservator, where such appointment is determined to be in the best interests of the protected person, constitutes a necessary expenditure on behalf of the protected person." Donley, at 844.
[¶ 21] North Dakota law provides similar statutory authority for a conservator to expend funds reasonably necessary for the benefit of the protected person, see N.D.C.C. § 30.1-29-25, and we conclude the rationale of Donley is persuasive. We conclude attorney fees may be awarded for the good-faith initiation of a conservatorship proceeding when appointment of a conservator is determined to be in the best interest of the protected person.
[¶ 22] Here, the district court's decision to award E.P. attorney fees said "these bills were incurred to preserve the estate" of T.K. We have sustained the district court's decision to appoint Alerus as conservator for T.K.'s estate, and on this record, we conclude the initiation of this conservatorship proceeding was not in bad faith. We review a district court's decision regarding attorney fees under the abuse-of-discretion standard. In re Guardianship and Conservatorship of D.M.O., 2008 ND 100, ¶ 14, 749 N.W.2d 517. We conclude the court's decision to award E.P. attorney fees was not arbitrary, capricious, or unreasonable, was not a misapplication of the law, and was the product of a rational mental process leading to a reasoned decision. We therefore conclude the court did not abuse its discretion in awarding E.P. attorney fees.

VI
[¶ 23] We affirm the order appointing Alerus as conservator for T.K.'s estate and awarding E.P. attorney fees.
[¶ 24] GERALD W. VANDE WALLE, C.J., DANIEL J. CROTHERS, MARY MUEHLEN MARING and CAROL RONNING KAPSNER, JJ., concur.