IN RE GUARDIANSHIP AND CONSERVATORSHIP OF
JAMES D. FORSTER, AN ALLEGED INCAPACITATED
AND PROTECTED PERSON.
MARK D. FORSTER, FORMER TEMPORARY GUARDIAN,
APPELLANT, V. MARK J. MILONE, THIRD
SUCCESSOR TEMPORARY GUARDIAN
AND CONSERVATOR, APPELLEE.
___ N.W.2d ___

Filed October 28, 2014.    No. A-13-893.

1.  **Guardians and Conservators: Appeal and Error.** An appellate court reviews
    guardianship and conservatorship proceedings for error appearing on the record
    made in the county court.
2.  **Judgments: Appeal and Error.** When reviewing a judgment for errors appearing
    on the record, an appellate court's inquiry is whether the decision conforms to
    the law, is supported by competent evidence, and is neither arbitrary, capricious,
    nor unreasonable.
3.  ____: ____. An appellate court, in reviewing a judgment of the trial court for
    errors appearing on the record, will not substitute its factual findings for those of
    the trial court where competent evidence supports those findings.
4.  **Moot Question: Words and Phrases.** A case becomes moot when the issues
    initially presented in the litigation cease to exist, when the litigants lack a legally
    cognizable interest in the outcome of litigation, or when the litigants seek to
    determine a question which does not rest upon existing facts or rights, in which
    the issues presented are no longer alive.
5.  ____: ____. Mootness refers to events occurring after the filing of a suit which
    eradicate the requisite personal interest in the resolution of the dispute that
    existed at the beginning of the litigation.
6.  **Moot Question: Dismissal and Nonsuit.** Unless an exception applies, a court or
    tribunal must dismiss a moot case when changed circumstances have precluded
    it from providing any meaningful relief because the litigants no longer have a
    legally cognizable interest in the dispute's resolution.
7.  **Moot Question: Appeal and Error.** Although an issue has become moot, an
    appellate court may review the issue under the public interest exception to the
    mootness doctrine if it involves a matter affecting the public interest or when
    other rights or liabilities may be affected by its determination.
8.  ____: ____. When determining whether a case involves a matter of public inter-
    est, an appellate court considers (1) the public or private nature of the question
    presented, (2) the desirability of an authoritative adjudication for future guidance
    of public officials, and (3) the likelihood of future recurrence of the same or a
    similar problem.
9.  **Guardians and Conservators: Pleadings.** An evidentiary hearing should be
    held expediently on a guardianship or conservatorship petition, and temporary

guardians and conservators are intended to exercise their powers in a limited manner and for a limited period of time.

10. **Statutes: Time.** A statute will be held to operate prospectively and not retrospectively unless the legislative intent or purpose that it should operate retrospectively is clearly disclosed.

11. **Jurisdiction: Appeal and Error.** Before reaching the legal issues presented for review, it is the duty of an appellate court to determine whether it has jurisdiction over the matter before it.

12. **Jurisdiction: Final Orders: Time: Appeal and Error.** An appellate court has jurisdiction over final orders that are appealed within 30 days from their entry.

13. **Final Orders: Appeal and Error.** Under Neb. Rev. Stat. § 25-1902 (Reissue 2008), the three types of final orders that an appellate court may review are (1) an order that affects a substantial right and that determines the action and prevents a judgment, (2) an order that affects a substantial right made during a special proceeding, and (3) an order that affects a substantial right made on summary application in an action after a judgment is rendered.

14. **Decedents' Estates: Final Orders.** Proceedings under the Nebraska Probate Code are special proceedings within the meaning of Neb. Rev. Stat. § 25-1902 (Reissue 2008).

15. **Words and Phrases.** A substantial right is an essential legal right, not a mere technical right.

16. **Final Orders.** Substantial rights under Neb. Rev. Stat. § 25-1902 (Reissue 2008) include those legal rights that a party is entitled to enforce or defend.

17. **Final Orders: Appeal and Error.** If a substantial right is affected, an order is directly appealable as a final order even though it does not terminate the action or constitute a final disposition of the case.

18. **Guardians and Conservators: Fees: Final Orders: Appeal and Error.** Awards of fees for services pursuant to Neb. Rev. Stat. § 30-2620.01 (Reissue 2008) that do not finally determine a guardian and conservator's claim for compensation are not final and appealable until the guardian and conservator is discharged from his or her duties.

19. **Trial: Waiver: Appeal and Error.** The failure to make a timely objection waives the right to assert prejudicial error on appeal.

20. **Affidavits: Records: Appeal and Error.** The existence or contents of affidavits filed with the clerk of the trial court and found in the transcript, but not preserved in the bill of exceptions, cannot be noted by an appellate court.

21. **Appeal and Error.** In order to be considered by an appellate court, an alleged error must be both specifically assigned and specifically argued in the brief of the party asserting the error.

22. **Pretrial Procedure: Proof: Appeal and Error.** The party asserting error in a discovery ruling bears the burden of showing that the ruling was an abuse of discretion.

23. **Evidence: Records: Appeal and Error.** A bill of exceptions is the only vehicle for bringing evidence before an appellate court; evidence which is not made a part of the bill of exceptions may not be considered.

24. **Records: Appeal and Error.** Appellate courts cannot rely upon information in the transcript to establish facts, even a stipulation of facts.
25. **Judicial Notice: Evidence: Records: Appeal and Error.** Items judicially noticed are to be separately marked, offered, and received as evidence to enable efficient review by an appellate court.

Appeal from the County Court for Douglas County: SHERYL L. LOHAUS, Judge. Affirmed in part, and in part vacated and remanded with directions.

Stephanie S. Shearer, of Reagan, Melton & Delaney, L.L.P., for appellant.

Mark J. Milone, of Govier & Milone, L.L.P., pro se.

MOORE, PIRTLE, and RIEDMANN, Judges.

RIEDMANN, Judge.

## I. INTRODUCTION

Mark D. Forster (Mark), a son of an alleged incapacitated person, appeals from the order of the county court for Douglas County approving the final accounting and inventory filed by the third successor temporary guardian and conservator, Mark J. Milone. For the reasons set forth below, we affirm the county court's judgment in all respects, with the exception of the court's awards of attorney fees to Milone on March 6 and April 23, 2012, because such awards were not supported by competent evidence.

## II. BACKGROUND

On August 10, 2011, Mark filed a petition to establish a guardianship and conservatorship for his father, James D. Forster (James). He alleged that James was incapacitated due to vascular dementia and was no longer capable of meeting his own physical needs, nor of making or communicating responsible decisions concerning his person and his property. Mark simultaneously filed an application for the appointment of himself as temporary guardian and conservator, alleging that an emergency existed because James was currently hospitalized and lacked the ability and understanding to make decisions for himself. The county court issued an order that same day

appointing Mark as James' temporary guardian for a period not to exceed 90 days.

On September 2, 2011, Jeffrey Stoehr, counsel for James, filed an objection to Mark's petition for appointment of a guardian and conservator, as well as a motion to remove Mark as temporary guardian and to appoint a new temporary guardian and conservator. A hearing was held on September 6 during which the court removed Mark as temporary guardian and appointed an attorney, Sally Hytrek, as successor temporary guardian and conservator. As to Mark's petition for appointment of a permanent guardian and conservator, the court found that the matter was contested and "should be set for a pre-trial hearing at which time a date will be set for an evidentiary hearing." The pretrial hearing was scheduled for November 25; however, it does not appear that the hearing was ever held.

On September 30, 2011, Hytrek moved to resign as temporary guardian and conservator and suggested a suitable person to replace her. The court entered an order the same day allowing Hytrek's resignation and appointing her successor, James' second successor temporary guardian and conservator, whom the court ordered to issue a written report within 30 days as to the issues that may require an evidentiary hearing. The record does not disclose that such a report was ever issued.

On November 29, 2011, Hytrek's successor moved to withdraw as temporary guardian and conservator. A hearing was held on December 6 during which the court permitted him to withdraw and indicated to the parties that it would appoint another temporary guardian within a week. The court issued an order the following day appointing Milone, an attorney, as third successor temporary guardian and conservator. It ordered Milone to issue a written report within 30 days as to the issues that may require an evidentiary hearing. Milone never issued such a report.

Various hearings were held to address attorney fees and other motions filed by the parties from December 2011 through August 2012. However, an evidentiary hearing on the issues raised in the petition for guardianship was never scheduled

or held. James died on August 26, 2012, at which point the temporary guardianship was still in place.

Upon James' death, Milone filed a final inventory and accounting as well as a petition for approval of the same, termination of the guardianship and conservatorship, and discharge of the guardian and conservator and a request for fees. Mark filed objections to the final inventory and accounting, alleging numerous failures by Milone. After several continuances, a hearing was held on the final inventory and accounting on May 21 and July 2, 2013. The county court subsequently issued a written order approving the final inventory and accounting. This appeal followed.

Additional facts as needed to address each assignment of error are contained in the appropriate section of our analysis below.

## I. ASSIGNMENTS OF ERROR

Mark assigns that the county court erred by (1) failing to hold an evidentiary hearing on the guardianship and conservatorship petition; (2) failing to require the temporary guardian to post bond and failing to hold a hearing regarding bond after statutory changes went into effect on January 1, 2012; (3) issuing an ex parte order without supporting evidence and without following proper procedures; (4) granting certain requests for attorney fees; (5) overruling Mark's motion to compel and motion to continue; and (6) failing to rule on Mark's objections to the final inventory and accounting.

## II. STANDARD OF REVIEW

[1-3] An appellate court reviews guardianship and conservatorship proceedings for error appearing on the record made in the county court. *In re Guardianship & Conservatorship of Herrick*, 21 Neb. App. 971, 846 N.W.2d 301 (2014). When reviewing a judgment for errors appearing on the record, an appellate court's inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable. *Id*. An appellate court, in reviewing a judgment of the trial court for errors appearing on the record, will not substitute its factual findings for those

of the trial court where competent evidence supports those findings. *Id.*

### III. ANALYSIS

#### 1. Failure to Hold
#### Evidentiary Hearing

Mark first asserts that the county court erred by failing to hold an evidentiary hearing on the guardianship and conservatorship petition. We agree, but we find that this issue became moot upon James' death.

[4-6] A case becomes moot when the issues initially presented in the litigation cease to exist, when the litigants lack a legally cognizable interest in the outcome of litigation, or when the litigants seek to determine a question which does not rest upon existing facts or rights, in which the issues presented are no longer alive. *In re Guardianship & Conservatorship of Larson*, 270 Neb. 837, 708 N.W.2d 262 (2006). Mootness refers to events occurring after the filing of a suit which eradicate the requisite personal interest in the resolution of the dispute that existed at the beginning of the litigation. *Wetovick v. County of Nance*, 279 Neb. 773, 782 N.W.2d 298 (2010). Unless an exception applies, a court or tribunal must dismiss a moot case when changed circumstances have precluded it from providing any meaningful relief because the litigants no longer have a legally cognizable interest in the dispute's resolution. *Id.*

We find that the county court's failure to hold an evidentiary hearing on Mark's petition to establish a guardianship and conservatorship for James is moot because the issues raised in such petition were relevant only while James was still living. Upon his death, the issues raised in the petition ceased to exist and Mark no longer had a legally cognizable interest in the outcome of the petition.

[7,8] Although an issue has become moot, an appellate court may review the issue under the public interest exception to the mootness doctrine if it involves a matter affecting the public interest or when other rights or liabilities may be affected by its determination. See *In re Interest of Thomas M.*, 282 Neb. 316, 803 N.W.2d 46 (2011). When determining

whether a case involves a matter of public interest, an appellate court considers (1) the public or private nature of the question presented, (2) the desirability of an authoritative adjudication for future guidance of public officials, and (3) the likelihood of future recurrence of the same or a similar problem. *Id*.

Considering these factors, we believe the public interest exception applies to this issue. The question presented is public in nature because it deals with the obligation of trial courts to follow statutory procedures designed to protect the rights of persons who are alleged to be incapacitated. Due to the importance of the rights involved and the likelihood of recurrence, we think it is appropriate to provide authoritative guidance regarding a trial court's responsibility in the protection of rights of allegedly vulnerable persons.

Neb. Rev. Stat. § 30-2619(b) (Reissue 2008) provides that upon the filing of a petition for guardianship, "the court shall set a date for hearing on the issues of incapacity." If an emergency exists, the court may enter an ex parte order appointing a temporary guardian with powers limited to those necessary to address the emergency. Neb. Rev. Stat. § 30-2626(a) (Reissue 2008). Under § 30-2626(e), the temporary guardianship shall terminate after 90 days or earlier if the court deems the circumstances leading to the order for temporary guardianship no longer exist or if a proper order for a permanent guardianship is entered. For good cause shown, the court may extend the temporary guardianship for successive 90-day periods. § 30-2626(d). Similar procedures apply to the appointment of a conservator. See Neb. Rev. Stat. §§ 30-2630.01 (Cum. Supp. 2012) and 30-2636 (Reissue 2008).

[9] As expressed by the Nebraska Supreme Court, temporary guardianships are statutorily limited in both their extent and their duration and the probate court has an obligation to adhere to these limitations:

> Read together, [§§ 30-2619 and 30-2626] provide that an evidentiary hearing should be held expediently on a guardianship or conservatorship petition and that temporary guardians and conservators are intended to exercise their powers in a limited manner and for a limited period

of time. We have recognized in guardianship proceedings that a true evidentiary hearing is required to support a finding of incompetency. . . . This rule cannot be circumvented by continuous extensions of a temporary guardianship, nor are numerous reports by a [guardian ad litem] a substitute for an evidentiary hearing.

While § 30-2626(d) does provide that the 90-day temporary guardianship period may be extended for good cause shown, it is hard to imagine what "good cause" could justify a delay of 8 months. . . .

. . . .

It is clear that the failure of the court to follow the statutory mandates with regard to the limited nature of the powers and duties of the temporary guardian and conservator, as well as its failure to follow the mandate of a timely evidentiary hearing on competency, constitutes plain error.

*In re Guardianship & Conservatorship of Larson*, 270 Neb. 837, 853-55, 708 N.W.2d 262, 275-77 (2006).

In the present action, Mark's petition for the appointment of a guardian and conservator was filed on August 10, 2011. James died over a year later on August 26, 2012, at which point a hearing on the petition still had not been held and a temporary guardian and conservator was still in place. No court orders were issued finding good cause for extending the temporary guardianship. Thus, we find that the trial court clearly erred in failing to hold an evidentiary hearing on the petition and in allowing the temporary guardianship and conservatorship to continue beyond the statutory 90-day period without a determination of incapacity. However, because James has died, we find this assignment of error is moot.

Mark argues that this issue is not moot, because the failure to hold an evidentiary hearing resulted in substantial expense to James' estate. He seems to assert that if an evidentiary hearing had been held, he could have been appointed permanent guardian, which would have reduced the fees charged to the estate. We reject that argument as speculative, especially given the fact that the court removed him as temporary guardian. Therefore, we hold that the issue is moot, but under the

public interest exception to the mootness doctrine, we determine that the trial court erred in failing to hold an evidentiary hearing.

## 2. Failure to Require Bond

Mark argues that the county court erred in failing to require the temporary guardians and conservators to post bond and in failing to hold a hearing after Neb. Rev. Stat. § 30-2641 (Reissue 2008) was amended to require such bond.

At the time each of the temporary guardians and conservators was appointed in this case, the posting of a bond was not statutorily required, but was left to the court's discretion. The relevant statute in effect at that time stated in part: "The court *may* require a conservator to furnish a bond conditioned upon faithful discharge of all duties of the trust according to law, with sureties as it shall specify and may eliminate the requirement or decrease or increase the required amount of any such bond previously furnished." Neb. Rev. Stat. § 30-2640 (Reissue 2008) (emphasis supplied). See, also, Neb. Rev. Stat. § 30-2627(e) (Reissue 2008) ("[t]he court *may* require a guardian to furnish a bond in an amount and conditioned in accordance with the provisions of sections 30-2640 and 30-2641" (emphasis supplied)).

The court's orders appointing Hytrek, Hytrek's successor, and then Milone as temporary guardians and conservators specifically stated that no bond was required. There were no objections filed in response to those orders, nor any motions asking the court to require a bond. Pursuant to Neb. Rev. Stat. § 30-2645(a) (Reissue 2008), "[a]ny person interested in the welfare of a person for whom a conservator has been appointed may file a petition in the appointing court for an order . . . requiring bond or security or additional bond or security." Because a bond was not required by statute and no request for bond was made, we find no error in the court's failing to require the temporary guardians and conservators to post bond.

Mark also asserts that the court should have held a hearing to address the bond requirement after the relevant statutes were

amended. Section 30-2640 was amended, operative January 1, 2012. The amended version reads in part:

> For estates with a net value of more than ten thousand dollars, the bond for a conservator shall be in the amount of the aggregate capital value of the personal property of the estate in the conservator's control plus one year's estimated income from all sources minus the value of securities and other assets deposited under arrangements requiring an order of the court for their removal. The bond of the conservator shall be conditioned upon the faithful discharge of all duties of the trust according to law, with sureties as the court shall specify. The court, in lieu of sureties on a bond, may accept other security for the performance of the bond, including a pledge of securities or a mortgage of land owned by the conservator. For good cause shown, the court may eliminate the requirement of a bond or decrease or increase the required amount of any such bond previously furnished.

§ 30-2640 (Cum. Supp. 2012).

[10] Nothing in the statute, as amended, indicates that the Legislature intended for it to be retroactive. A well-recognized rule of statutory construction, and one firmly established in this jurisdiction, is that a statute will be held to operate prospectively and not retrospectively unless the legislative intent or purpose that it should operate retrospectively is clearly disclosed. *War Finance Corporation v. Thornton*, 118 Neb. 797, 226 N.W. 454 (1929). See, also, *Smith v. Mark Chrisman Trucking*, 285 Neb. 826, 832, 829 N.W.2d 717, 722 (2013) ("[s]tatutes covering substantive matters in effect at the time of the transaction or event govern, not later enacted statutes").

Because the statute was not retroactive, the county court did not err by failing to require Milone, who had been appointed as temporary guardian and conservator prior to the amendment, to post bond. If Mark desired to revisit the issue, he could have filed a motion for an order requiring bond pursuant to § 30-2645. He failed to do so. This assignment of error has no merit.

### 3. EX PARTE ORDER

Mark's next assignment of error challenges the county court's ex parte order allowing one of James' daughters access to James and restricting the access of other relatives. Mark argues that the ex parte order was issued with no evidentiary basis and without the opportunity for an expedited hearing. We decline to address this assignment of error because we find it is moot.

A case becomes moot when the issues initially presented in the litigation cease to exist, when the litigants lack a legally cognizable interest in the outcome of litigation, or when the litigants seek to determine a question which does not rest upon existing facts or rights, in which the issues presented are no longer alive. *In re Guardianship & Conservatorship of Larson*, 270 Neb. 837, 708 N.W.2d 262 (2006). The ex parte order granting and restricting access to James was relevant only while he was still living. Because he is now deceased, any errors in issuing the ex parte order are now moot. Accordingly, we decline to address this assignment of error.

### 4. ATTORNEY FEES

Mark asserts that the county court erred by granting the following requests for attorney fees: (1) $4,643 awarded to Hytrek following a December 22, 2011, hearing; (2) $7,000 awarded to James Reisinger, counsel for Mark who withdrew in 2012, on February 28, 2012; (3) $17,074 awarded to Milone on March 6, 2012; (4) $27,723.05 awarded to Milone on April 23, 2012; and (5) $5,000 awarded to Stoehr on February 28, 2012. We note that Mark does not challenge the final fees awarded in the county court's order from which he has appealed.

[11,12] Before reaching the legal issues presented for review, it is the duty of an appellate court to determine whether it has jurisdiction over the matter before it. *In re Estate of Gsantner*, 288 Neb. 222, 846 N.W.2d 646 (2014). This court has jurisdiction over final orders that are appealed within 30 days from their entry. See Neb. Rev. Stat. § 25-1912 (Reissue 2008). The notice of appeal in this case was filed on October 8, 2013. Because the fee orders challenged in this

appeal were issued more than 30 days prior to that, we must determine whether they were final orders at the time they were entered. If so, we do not have jurisdiction to consider them now.

[13] Under Neb. Rev. Stat. § 25-1902 (Reissue 2008), the three types of final orders that an appellate court may review are (1) an order that affects a substantial right and that determines the action and prevents a judgment, (2) an order that affects a substantial right made during a special proceeding, and (3) an order that affects a substantial right made on summary application in an action after a judgment is rendered. *In re Estate of Gsantner, supra*.

[14] The requests for fees and the orders granting such fees in this case were made pursuant to Neb. Rev. Stat. §§ 30-2620.01 and 30-2643 (Reissue 2008), which are contained within the Nebraska Probate Code. Our law is clear that proceedings under the Nebraska Probate Code are special proceedings within the meaning of § 25-1902. *In re Estate of Muncillo*, 280 Neb. 669, 789 N.W.2d 37 (2010). See, also, *In re Guardianship & Conservatorship of Larson, supra* (proceedings initiated to appoint guardian and conservator are special proceedings).

[15-17] Having determined that the fee orders were made in a special proceeding, we next consider whether they affected a substantial right. A substantial right is an essential legal right, not a mere technical right. See *In re Estate of Muncillo, supra*. Substantial rights under § 25-1902 include those legal rights that a party is entitled to enforce or defend. *In re Estate of Gsantner, supra*. If a substantial right is affected, an order is directly appealable as a final order even though it does not terminate the action or constitute a final disposition of the case. See *In re Estate of Snover*, 233 Neb. 198, 443 N.W.2d 894 (1989).

The Nebraska Supreme Court recently held that an order awarding a personal representative fee affected a substantial right because it finally determined the personal representative's claim for reasonable compensation under Neb. Rev. Stat. § 30-2480 (Reissue 2008). See *In re Estate of Gsantner, supra*. The court noted that although the personal representative's

service was not yet complete at the time the fee was awarded, the order in question was nonetheless final because it did not include any language indicating that the award was subject to later revision or augmentation, whereas a previous award to the personal representative noted that the award was a partial fee. *Id*.

Similarly, here, the orders awarding fees to Hytrek, Reisinger, and Stoehr finally determined each of their respective claims for fees and the amount of compensation payable to each from the estate. Hytrek was entitled to reasonable compensation for her services as temporary guardian and conservator pursuant to § 30-2620.01. Reisinger's request for attorney fees was based on his representation of Mark in initiating the guardianship and conservatorship proceedings. See *In re Guardianship & Conservatorship of Donley*, 262 Neb. 282, 631 N.W.2d 839 (2001) (petitioner entitled to payment from protected person's estate for attorney fees incurred in guardianship and conservatorship proceedings initiated in good faith). Stoehr had a claim for attorney fees under § 30-2620.01 for his representation of James. The orders awarding fees to each of these individuals were final determinations and not subject to later revision, as the awardees' services in the case were complete at the time the orders were entered.

[18] Milone's services as temporary guardian and conservator, on the other hand, were still ongoing at the time the fees in question were awarded to him. Each of the requests for fees set forth the specific time period of services for which he was seeking compensation under § 30-2620.01. Unlike the award of fees to the personal representative in *In re Estate of Gsantner*, 288 Neb. 222, 846 N.W.2d 646 (2014), the awards of March 6 and April 23, 2012, did not finally determine Milone's claim for reasonable compensation for his service as temporary guardian and conservator. Therefore, we find that these awards were not final and appealable at the time they were entered and did not become final and appealable until the court entered its final order terminating the guardianship and conservatorship and discharging Milone from his duties. As a result, we have jurisdiction to review these orders.

In early 2012, Milone filed a motion for attorney fees seeking approximately $17,000 in attorney fees for services from December 8, 2011, to January 26, 2012. Mark and his counsel were both present at the hearing on March 5, and his counsel specifically stated he had no objection to the attorney fee request. Milone filed another motion for attorney fees on March 21, seeking approximately $28,000 in fees for services performed from January 26 to March 16. A hearing was held on April 23, and Mark's counsel was present. Once again, he advised the court that he had no objection to the fees being requested.

[19] The failure to make a timely objection waives the right to assert prejudicial error on appeal. *State v. Nadeem*, 284 Neb. 513, 822 N.W.2d 372 (2012). Since Mark did not object to the attorney fees awarded on March 6 and April 23, 2012, to Milone, these issues have been waived. However, an appellate court's standard of review in guardianship and conservatorship cases is for error appearing on the record. See *In re Guardianship & Conservatorship of Herrick*, 21 Neb. App. 971, 846 N.W.2d 301 (2014). When reviewing a judgment for errors appearing on the record, an appellate court's inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable. *Id*.

In *In re Trust of Rosenberg*, 269 Neb. 310, 693 N.W.2d 500 (2005), the Nebraska Supreme Court vacated an award of fees to a trustee based on its finding that there had been no witness testimony or other evidence adduced to support the request for fees. It remanded the matter to the county court with directions to hold an evidentiary hearing. *Id*. Similarly, in *In re Trust Created by Crawford*, 20 Neb. App. 502, 826 N.W.2d 284 (2013), this court vacated an award of accounting fees, finding the award was not supported by competent evidence where no witnesses testified and no evidence was received to support payment of the fees.

[20] Upon our review of the record in this case, we note that there was no testimony or evidence received at the hearings held on March 5 and April 23, 2012, in support of Milone's

requests for attorney fees. Although Milone offered a motion and affidavit in support of his request for attorney fees at the March 5 hearing, the exhibit was not received into evidence and is not contained in our record on appeal. During the hearing on April 23, Milone stated that his affidavit was "on file," but he did not offer that affidavit, nor any other evidence in support of his fee request, into evidence. The existence or contents of affidavits filed with the clerk of the trial court and found in the transcript, but not preserved in the bill of exceptions, cannot be noted by an appellate court. *Murphy v. Murphy*, 237 Neb. 406, 466 N.W.2d 87 (1991). Because no evidence was received in support of these two requests for attorney fees, we find that the court's award of such fees was not supported by competent evidence. Therefore, we vacate the court's orders awarding fees on March 6 and April 23 and remand the matter to the county court with directions to hold an evidentiary hearing.

## 5. Motion to Compel and
### Motion to Continue

[21] Mark asserts that the county court erred in overruling his motion to compel discovery and his motion to continue the hearing on the final inventory. However, we note that the argument section of his brief addresses only the motion to compel. In order to be considered by an appellate court, an alleged error must be both specifically assigned and specifically argued in the brief of the party asserting the error. *Irwin v. West Gate Bank*, 288 Neb. 353, 848 N.W.2d 605 (2014). Because Mark makes no argument with respect to the motion to continue, we will not address that portion of his assignment of error on appeal.

### (a) Facts

On May 21, 2013, the day on which the petition for approval of the final inventory and accounting was set to be heard, Mark filed a motion to compel Milone to provide all "'memo to file'" documents referenced in the billing statements presented in Milone's fee applications. Mark's motion alleged that he submitted a discovery request for such documents and that Milone objected to the request on May 9, on the bases of

attorney-client privilege and attorney work product. The county court overruled the motion as untimely filed.

### (b) Resolution

Mark argues that the requested documents were not subject to the attorney-client privilege and that his access to such documents was necessary in order to adequately prepare for the hearing on the final inventory and accounting. We decline to address the merits of Mark's motion to compel, because we agree with the county court's conclusion that the motion was untimely filed.

Mark was afforded ample time to conduct discovery in preparation for the final hearing. Milone's petition for approval of the final inventory and accounting was filed on October 18, 2012, and his final affidavit in support of his fee application was filed on January 24, 2013. Therefore, Mark had several months in which to serve discovery requests and, if necessary, seek a court order compelling Milone to comply with such discovery requests.

Although the record does not reflect the precise date on which Mark's discovery requests were served, it does reflect that Milone responded to the requests on May 9, 2013. Milone asserted at the hearing that this was approximately 1 week prior to the expiration of the 30-day period in which he was entitled to respond, and Mark did not dispute that assertion. Thus, it appears that Mark served such discovery requests on or about April 18, which was approximately 1 month prior to the scheduled hearing.

Despite receiving Milone's objection to the discovery request on May 9, 2013, Mark did not file his motion to compel until May 21, the day the final hearing was scheduled to be held. Mark provides no justification for waiting until approximately 1 month before the final hearing to request what he characterizes as "necessary" documents, and we conclude that he did so at his own peril.

[22] The party asserting error in a discovery ruling bears the burden of showing that the ruling was an abuse of discretion. *U.S. Bank Nat. Assn. v. Peterson*, 284 Neb. 820, 823 N.W.2d 460 (2012). We find no abuse of discretion in the

county court's decision to overrule Mark's motion to compel as untimely filed.

### 6. Failure to Rule
### on Objections

Mark argues that the county court erred by failing to rule on his objections to the final inventory and accounting. We find that the county court's order implicitly overruled Mark's objections, and we find no error in such ruling.

### (a) Facts

Mark filed an objection to the final inventory and accounting alleging the following: Milone failed to work with "the Department of Adult Protective Services" to investigate James' companion, who Mark alleged had financially exploited James; Milone failed to comply with the court's order to submit a written report within 30 days as to any issues that may require an evidentiary hearing; Milone failed to provide appropriate notice of sale of James' real and personal property; Milone failed to account for James' insurance business; Milone failed to provide proper notice of hearing on his motion for fees; Milone failed to identify with sufficient specificity how James' assets were valued, marketed, and sold so that James' family could assess the fairness of the sale and exclude the possibility of self-dealing; Milone failed to properly investigate the estate planning documents presented to him; Milone's request for fees failed to provide sufficient information as to the work he did and whether adequate services were rendered to James.

At the hearing, Milone presented evidence in support of his final inventory and accounting and testified regarding the actions he took as temporary guardian and conservator. On cross-examination, Mark's counsel questioned Milone extensively regarding many of the allegations raised in Mark's objections to the final inventory and accounting. After Milone rested his case, Mark's counsel indicated to the court that she would need at least half of a day to present Mark's case. The matter was continued to accommodate this request.

The hearing resumed on July 2, 2013. Counsel for Mark asked the court to take judicial notice of "the court file in this case, PR11-1103, and any exhibits that are part of that file." Milone had no objection, and the court agreed to "take judicial notice of the court file and exhibits." At that point, Mark's counsel informed the court that Mark would not be presenting any further evidence. The county court subsequently issued an order approving the final inventory and accounting, but did not expressly rule on Mark's objections.

### (b) Resolution

Mark argues that the county court erred by failing to rule on his objections to the final inventory and accounting. Although the county court's order does not specifically address Mark's objections, we find that it implicitly overruled them by approving the final inventory and accounting. It is clear that the county court considered Mark's objections, as its order states that the matter came on for hearing "upon [Milone's] Petition for Approval of Final Inventory and Accounting, Termination of Guardianship and Conservatorship, and Discharge and Approval of Final Fees, and *Objections to the same filed by Mark* [and four of his siblings]." Mark has not cited any authority which requires the court to specifically address the merits of each objection to a petition for approval of a final inventory and accounting; nor are we aware of any such authority. We find that by granting Milone's request to approve the final inventory and accounting, the court implicitly overruled Mark's objections.

Because Mark's assignment of error is limited to the court's alleged failure to rule on his objections, we are not required to address the merits of each of Mark's objections. However, we have reviewed the record on appeal and find no error in the county court's order implicitly overruling such objections.

[23-25] We note that Mark asked the court to take judicial notice of the court file and exhibits contained within the court file and that the court agreed to do so. However, because those records were not offered or received into evidence, we cannot consider them on appeal. A bill of exceptions is the

only vehicle for bringing evidence before an appellate court; evidence which is not made a part of the bill of exceptions may not be considered. *State v. Patton*, 287 Neb. 899, 845 N.W.2d 572 (2014). Appellate courts cannot rely upon information in the transcript to establish facts, even a stipulation of facts. *City of Lincoln v. Nebraska Pub. Power Dist.*, 9 Neb. App. 465, 614 N.W.2d 359 (2000). Items judicially noticed are to be separately marked, offered, and received as evidence to enable efficient review by this court. *Saunders Cty. v. Metropolitan Utilities Dist.-A*, 11 Neb. App. 138, 645 N.W.2d 805 (2002).

The record before us reflects that Mark was given an opportunity to present evidence in support of his objections, but he declined to do so. Mark's counsel questioned Milone at length regarding many of the allegations raised in the objections, but fell short in proving those allegations. The county court heard the testimony and observed the witnesses, and ultimately ruled in favor of Milone. Based on the evidence properly before us, we find no error in the county court's having done so.

## VI. CONCLUSION

For the foregoing reasons, we affirm the judgment of the county court, with the exception of the court's orders awarding attorney fees to Milone on March 6 and April 23, 2012. Because those awards were not supported by competent evidence, we vacate those orders and remand the matter to the county court with directions to hold an evidentiary hearing.

Affirmed in part, and in part vacated
and remanded with directions.